MDL No. 778.
No. CV-85-2132.

United States District Court, E.D. New York.

Aug. 12, 1993.

Milberg Weiss Bershad Specthrie & Lerach, New York City, for David J. Michaels.

D'Amato & Lynch, New York City, for National Union Fire Ins. Co. of Pittsburgh, PA.

Jones, Day, Reavis, & Pogue, Columbus, OH, for Jeffrey P. Johnson, Comm'r of Banking and Ins. for State of Vt. as Receiver of Ambassador Ins. Co.

Anderson Kill Olick & Oshinsky, New York City, for Salvatore R. Curiale, Superintendent of Ins. for State of N.Y. as Liquidator of Horizon Ins. Co.

### MEMORANDUM AND ORDER

DEARIE, District Judge.

From December 22, 1983 through December 22, 1986, the directors and officers of Ambassador Group, Incorporated ("Ambassador Group"), an insurance holding company, and its subsidiaries were insured under a directors and officers liability policy issued by plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). During the policy period, certain directors and officers were sued in four separate actions including one initiated by a class of Ambassador Group shareholders represented by David J. Michaels (the "Michaels class"), one initiated by the Vermont Commissioner of Banking and Insurance (the "Vermont Commissioner") as receiver for Ambassador Insurance Company, a subsidiary of Ambassador Group, and one initiated by the New York Superintendent of Insurance (the "New York Liquidator") as liquidator of Horizon Insurance Company, another subsidiary of Ambassador Group. National Union filed this statutory interpleader action pursuant to 28 U.S.C. § 1335 to facilitate the resolution of the parties' potentially competing entitlements to policy proceeds.

The motions currently before the Court arise out of each claimant's efforts to position itself favorably with respect to the other claimants competing for the limited proceeds available under the insurance policy and National Union's efforts to limit its total liability. The Michaels class has moved for partial summary judgment, seeking essentially a declaration from the Court that, assuming it prevails in its lawsuit, it is the only party

entitled to policy proceeds for claims made in year one of the policy.[1] Under the Michaels class's construction of the policy, the Vermont Commissioner of Banking and the New York Superintendent of Insurance must share the proceeds available for claims made in year two of the policy. National Union has cross-moved for partial summary judgment. National Union contends that the policy's annual limit applies to losses incurred in a given year, as opposed to losses arising from claims made in a given year, and it seeks a declaration that the claims of the Michaels class, the Vermont Commissioner of Banking and Insurance, and the New York Superintendent of Insurance must be satisfied from the proceeds available for losses incurred in year one only. To decide these motions, the Court must construe arguably conflicting terms of the policy's loss provisions. For the reasons set forth below, the Michaels class's motion is granted, and National Union's cross-motion is denied.

## Background

On December 22, 1983, National Union issued to Ambassador Group a Directors and Officers Liability and Corporate Reimbursement insurance policy covering the period from December 22, 1983 through December 22, 1986. The policy provides a maximum of three million dollars of coverage for losses arising from all claims made during each policy year. (*See* National Union Directors and Officers Liability and Corporate Reimbursement Policy (hereinafter Policy) ¶¶ 1, 5(b).)[2] During the policy period, four separate actions were brought against certain directors and officers of Ambassador Group,

Ambassador Insurance Company and Horizon Insurance Company.

Specifically, on June 5, 1985, Ambassador Group shareholders brought a class action lawsuit against a number of directors and officers of Ambassador Group entitled *David Michaels v. Ambassador Group, Inc., et al.* (the *"Michaels* action"). The complaint alleges, in substance, that Ambassador Group and certain directors and officers violated Section 10(b) of the Securities Exchange Act of 1934. By letter dated June 15, 1984, National Union received notice of the action from Ambassador Group's counsel. (Ex. J to Aff. of Barry A. Weprin.)

A second action, styled *David T. Bard v. Arnold Chait, et al.* (the *"Vermont* action"), was filed by the Vermont Commissioner of Banking and Insurance as receiver for Ambassador Insurance Company on May 21, 1985.[3] Prior to the initiation of the action, by letter dated October 17, 1984, counsel for the Vermont Commissioner informed National Union that, following a bankruptcy hearing, the "Commissioner ha[d] uncovered facts which [led] him to conclude that certain former directors and officers were guilty of acts falling within the scope of coverage afforded by the ... policy, resulting in losses to the estate of the Ambassador." The letter concluded that National Union was thereby "given notice of a claim." In a second letter to National Union, dated November 21, 1984, counsel for the Commissioner further stated:

[L]et me assure you that we have read carefully and researched thoroughly the coverages available under the subject policy. We are also aware that claims pressed against directors and officers on behalf of

---

**1.** Specifically, the Michaels class seeks a declaration that the only parties entitled to the proceeds available under the policy for claims made in year one are the Michaels class and the individual defendant directors and officers Arnold Chait, Doris June Chait, Edward C. Chait, Daniel Hirsch, Joseph Maresca, Douglas M. Auster, Jay Wells, and Richard A. Tafro. The Michaels class asserts that it has priority over the individual defendant directors and officers and that the directors and officers are only entitled to policy proceeds if funds remain after satisfaction of the claim of the class. This is consistent with the Court's earlier determination that under the policy, claims of third parties have priority over claims of insureds for legal fees. *See In re Am-*

bassador Group Inc. Litigation, 738 F.Supp. 57 (E.D.N.Y.1990).

**2.** Unless otherwise noted, sections referred to are sections in the Directors and Officers Liability portion of the policy.

**3.** In November of 1983, following a determination that Ambassador Insurance Company was in hazardous financial condition, the Vermont Commissioner of Banking and Insurance was appointed receiver of Ambassador Insurance Company. Ambassador Insurance's management was enjoined from conducting the company's business.

the Commissioner as receiver are to be presented directly to those directors and officers. We have written you in accordance with the policy provision regarding notice of occurrence and to allow you an opportunity to commence any investigation you feel necessary.

(Ex. I to Aff. of Barry A. Weprin, at 2.) By letter dated May 28, 1985, counsel for Ambassador Insurance's directors and officers informed National Union that the Vermont Commissioner had filed a complaint. (Ex. K to Aff. of Barry A. Weprin.)

A third action, entitled *James P. Corcoran v. Ambassador Group, Inc., et al.* (the "*New York* action"), was brought by the New York Superintendent of Insurance on October 4, 1985. The complaint alleges essentially that the directors and officers of Horizon Insurance mismanaged the company in derogation of their duty of loyalty and permitted the company to be looted by the subsidiary Ambassador Insurance. On November 6, 1985, National Union received notice of the action. (Ex. R. to Aff. of Michael Mitrovic in Supp. of Pla.'s Mot. for Summ. J. Granting Interpleader Relief.) The fourth action, *David T. Bard v. Alan S. Quaif, et al.* (the *Quaif* action), has been discontinued.

In its prior decision dated July 29, 1988, this Court granted motions made by several of the parties to dismiss for National Union's failure to post a sufficient bond to sustain the interpleader action. On the basis of the claimants' contention that at least two policy years were implicated by their claims, the Court determined that it lacked jurisdiction because National Union had deposited only three million dollars. To vest the Court with jurisdiction in a statutory interpleader action over the proceeds of an insurance policy, the plaintiff must deposit not what it views as its maximum liability, but the total amount the claimants seek under the policy. Accordingly, National Union was required to post an additional three million dollars to sustain the action. *See National Union Fire Ins. Co. v. Ambassador Group*, 691 F.Supp. 618, 621 (E.D.N.Y.1988) ("*National Union*

*I* "). In deciding those motions, the Court rejected National Union's argument that claims involving 'the same act or interrelated acts' relate back to the policy year in which the first of the related claims was made and, therefore, compete for the proceeds available in single policy year. *See Id.,* at 622–23. At the time, placement of the *Vermont* claim, the claim underlying the *Vermont* action, in a particular policy year was not at issue. Instead, the parties were disputing whether the claims underlying the *New York* and *Quaif* actions were claims made in year one or year two. *See Id.,* at 622.

### Arguments

The primary task currently before the Court is to interpret the policy's loss provisions, thereby determining which claims must compete for which proceeds available under the policy. The focus of the parties' dispute is the placement of the *Vermont* claim in a particular year. The Michaels class contends that, under the terms of the policy, the *Vermont* claim constitutes a "claim made" in year two of the policy and, therefore, the Vermont Commissioner must share the proceeds available to satisfy claims made in policy year two with the New York Liquidator. In opposition, the Vermont Commissioner, the New York Liquidator and National Union contend that the *Vermont* claim is a claim made in year one. Further, they argue that the year in which the loss arising from a claim is incurred determines the proceeds from which the claim is paid, and that, pursuant to the loss provisions of the policy, the loss arising from the *Vermont* claim was incurred in year one. National Union also contends, as it did in its earlier motion for summary judgment to sustain the interpleader action, that the claim underlying the *New York* action must be satisfied with year one proceeds. There is essentially no dispute that the claim underlying the *Michaels* action is a claim made in year one,[4] and all parties agree that all three claims were made during the policy period.

---

**4.** In his response to the Michaels class's 3(g) statement, the Vermont Commissioner of Banking and Insurance states that "if 'claim made'

means 'loss incurred' for the purposes of determining which Policy Year's coverage is at risk for the *Michaels* claim, there is no dispute."

## Discussion

*The Policy*

■ The policy at issue is a "claims made" policy. The insuring clause provides that the policy pays on behalf of the directors and officers of Ambassador Group and its subsidiaries "loss ... arising from any claim or claims which are first made against the [directors or officers] ... during the policy period by reason of any Wrongful Act." (Policy ¶ 1.) A Wrongful Act is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the [directors or officers] or any of the foregoing so alleged by any claimant...." (Policy ¶ 2(d).) "Claim" and "claim made" are not defined in the policy, but "loss" is. Section 2(c) defines "loss" as any amount the directors or officers are legally obligated to pay for claims made against them for Wrongful Acts. (Policy ¶ 2(c).) The policy section entitled Loss Provisions defines, among other things, the time when a loss is incurred. It provides, in pertinent part,:

    (a) The time when a loss shall be incurred within the meaning of this policy shall be the date on which [Ambassador Group [5] or its directors and officers] shall give written notice to [National Union] as hereinafter provided.

    (b) [Ambassador Group or its directors and officers] shall as a condition precedent to the [directors' and officers'] right to be indemnified under this policy give to [National Union] notice as soon as practicable in writing of any claims made upon the [directors and officers].

    (c) If during the policy period ...:

        (i) [Ambassador Group or its directors and officers] shall receive written or oral notice from any third party that it is the intention of such third party to hold the [directors and officers] re-

sponsible for the results of any specified Wrongful Act by the [directors and officers] ...; or

        (ii) (Ambassador Group or its directors and officers] shall become aware of any occurrence which may subsequently give rise to a claim being made against the [directors and officers] in respect of any such Wrongful Act;

and shall in either case during such period give written notice to [National Union] of the receipt of such written or oral notice under (i) above or of such occurrence under (ii) above, then any claim which may subsequently be made against the [directors and officers] arising out of such Wrongful Act shall for the purpose of this policy be treated as a claim made during the currency hereof.

(Policy ¶ 7). The policy does not cover, among other things, loss in connection with any claim made which, "at the time of happening of such loss," is covered by another existing valid policy under which payment of the loss is actually made. (Policy ¶ 4(g).)

*Placement of the Vermont Claim*

### Letters from the Vermont Commissioner

■ In order to determine which proceeds are available to satisfy the claim of the Vermont Commissioner underlying the *Vermont* action, the Court must determine when the *Vermont* claim was "made" within the meaning of the policy. The Commissioner's letters dated October 17, 1984, and November 21, 1984, are the only evidence of the *Vermont* claim prior to the institution of the action in 1985. The Vermont Commissioner and the New York Liquidator argue that the letters constitute a claim made,[6] and that, therefore, the *Vermont* claim is a year one claim. The Michaels class argues that the October 17 letter is merely notice of an occurrence which may subsequently give rise to a claim, as defined in section 7(c)(ii) of the

---

5. For purposes of the policy, "Ambassador Group" includes the subsidiaries of Ambassador Group.

6. In the papers submitted to the Court, the Vermont Commissioner specifically argues that the letters constitute a claim made. The New York Liquidator contends both that the letters constitute a claim and notice of a claim. (*See, e.g.,*

New York Liquidator's Statement Pursuant to Local Rule 3(g) ¶ 7; New York Liquidator's Mem. in Opp'n to Def. Michaels' Mot., at 11.) If the letters constitute a claim made, they necessarily constitute notice of that claim under the policy, since they were sent directly to National Union. Accordingly, the Court analyzes only whether they constitute a claim made.

policy, or, at most, notice that a claim might be brought in the future. Therefore, the class contends, the *Vermont* claim was not made until year two of the policy, when the complaint was filed. The Court concludes that although the letters may indicate the likelihood, if not inevitability, of some future claim, they do not constitute a "claim made" within the meaning of the policy. Therefore, the *Vermont* claim is a claim made in year two, not year one.

*Claims Made and Notification to the Insurer*

■ Under the terms of the policy, either the company, in this instance Ambassador Insurance, or its directors and officers may notify National Union of a claim made, of notice of an occurrence which may give rise to a claim and of notice of a third party's intention to hold the directors and officers responsible for a Wrongful Act. "Claim made," however, is not defined in the policy. Because notice is directed to the insurer, notice—whether of a claim, of an occurrence, or of a third party's intention to make a claim—does not itself constitute a "claim made" upon the directors and officers. Notice is the reporting of a claim or a potential claim; the assertion of a claim directly against the directors and officers allegedly responsible for wrongdoing is the making of a claim. *See Winkler v. National Union Fire Ins. Co.,* 930 F.2d 1364, 1366 n. 4 (9th Cir.1991) (because the meeting at which heirs announced their intention to take legal action was an informal meeting between shareholders and management and not a meeting of the Board, and no demand for repayment was ever made to the Board, no claim was made on the members of the Board within the meaning of the National Union policy); *see also St. Paul Fire and Marine Ins. Co. v. House,* 315 Md. 328, 554 A.2d 404, 407 (1989) (noting that unless defined as such, the making of a claim is not the reporting of a claim or potential claim by the insured to the insurer).

■ The specific language of the notice provisions of the policy support this distinction between the making of a claim and the reporting of a claim made or a potential or inchoate claim. Section 7(b) provides that either the company or its directors and officers must, as a condition precedent to the directors' and officers' right to be indemnified, give notice as soon as practicable of any claims made upon the directors and officers. Section 7(c) provides that if National Union is given written notice of an inchoate claim, the claim subsequently made will be deemed a claim made during the policy period. Thus, the reporting of a claim or an inchoate claim by the company or the directors and officers must necessarily be something other than the making of the claim. Because the letters of October 17 and November 21 were written directly to National Union and not to the directors and officers, it is apparent that the Commissioner as receiver for Ambassador Insurance was reporting, that is, giving notice, to its insurer, not making a claim.

This conclusion is reinforced by the Vermont Commissioner's acknowledgement in the November 21 letter of his awareness that claims "pressed" against directors and officers are to be "presented" directly to them. (Ex. I to Aff. of Barry A. Weprin, at 2.) There is no evidence that the claims were presented to the directors and officers or "made" after the November 21 letter was sent and prior to the filing of the *Vermont* action. However, in light of the dual role of the Vermont Commissioner as both Ambassador Insurance, the company whose directors and officers were insured under the policy, and the party pursuing a claim against Ambassador Insurance's directors and officers, the Court considers whether the letters themselves could be considered a claim made.

*Definition of a Claim*

■ As noted above, the policy does not define "claim." Thus, to determine what constitutes a claim within the meaning of the policy, the Court must read the policy as a whole, and "whenever possible ... give effect to all of its parts." *Alfin, Inc. v. Pacific Ins. Co.,* 735 F.Supp. 115, 119 (S.D.N.Y.1990) (quoting *American Home Products Corp. v. Liberty Mutual Insurance Co.,* 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir.1984)). The terms of the policy clearly indicate that a claim may

be something other than a lawsuit, for "loss" is not defined as only amounts incurred in the defense of a suit. (*See* Policy ¶ 2(c).) However, it is also clear that a claim is something more than the threat of a lawsuit. The policy distinguishes between "claims made" upon the directors and officers, notice to the directors and officers of a third party's intention to hold them responsible for the results of a specific Wrongful Act, and the directors' and officers' awareness of an occurrence which may subsequently give rise to a claim against them. (*See* Policy ¶ 7) Thus, the policy itself confirms that neither notice to the directors and officers of a third party's intention to make a claim nor awareness on the part of the directors and officers of an occurrence that may subsequently give rise to a claim is the equivalent of a claim having been made. They are something different from and antecedent to a claim. *See Winkler*, 930 F.2d at 1366 (citing *Bensalem Township v. Western World Insurance Co.*, 609 F.Supp. 1343, 1348 (E.D.Pa.1985) and construing a National Union policy with the same terms); *see also Insurance Corp. of America v. Dillon, Hardamon & Cohen*, 725 F.Supp. 1461, 1470 (N.D.Ind.1988) (similar policy provisions held to indicate that notice of an alleged injury is something different from a claim).

Upon examination, it is apparent that the letter dated October 17, 1984, is nothing more than notice to National Union from the Vermont Commissioner acting as Ambassador Insurance that certain unspecified directors and officers were likely guilty of Wrongful Acts. Despite the declaration in the letter that the letter constitutes notice of a claim, the letter in substance is a notice of occurrence, not a claim or notice of a claim. The second letter adds nothing to the first to transform the two into a claim made. Indeed, the Vermont Commissioner acknowledges in the November 21, 1984, letter that the October 17 letter was a notice of occurrence. The Vermont Commissioner also states that he is aware that he must present claims pressed against the directors and officers directly to them. Thus, the November 21 letter could at best constitute notice of a party's intention to make a claim as defined in section 7(c)(i). However, the letter, like the October 17 letter, does not specify a Wrongful Act, a required element of section 7(c)(i) notice.

■ Relevant case law supports the conclusion that the letters substantively do not constitute a claim. Consistent with the terms of the policy, a claim may be something other than a formal lawsuit. *See, e.g., Phoenix Ins. Co. v. Sukut Construction Co.*, 136 Cal.App.3d 673, 677, 186 Cal.Rptr. 513 (1982); *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal.App.3d 261, 270, 134 Cal.Rptr. 427 (1976). However, a claim is not merely a contention that some wrongdoing occurred. *See MGIC Indemnity Corp. v. Home State Savings Association*, 797 F.2d 285, 288 (6th Cir.1986) (letter to saving association's attorney identifying individual officers as targets of a grand jury investigation constituted a claim that a wrongful act had occurred, but not a claim for payment on account of a wrongful act, and, therefore, was not a claim within the meaning of the policy). Rather, a claim is a demand for specific relief owed because of alleged wrongdoing. *See Id.; Insurance Corp. of America v. Dillon, Hardamon & Cohen*, 725 F.Supp. 1461, 1469 (N.D.Ind. 1988) ("claim requires a demand for money or property or some specific relief, accompanied by an allegation of negligence, malpractice, or some kind of wrongdoing."); *Insurance Corp. of America v. Dillon, Hardamon & Cohen*, 725 F.Supp. 1478 (N.D.Ill.1989) (letter to insureds containing a specific demand for relief and enumerating various acts of negligence, as well as explicitly using the word claim, presented a claim); *Phoenix Ins. Co. v. Sukut Construction Co.*, 136 Cal. App.3d at 677, 186 Cal.Rptr. 513 (court defined a claim as a demand for something as of right, or as due, and held claim made when third party asked insured to cure without charge problems created by inadequate mechanics lien).

Evaluating the letters in light of the case law, it is clear that the substance of the letters does not amount to a claim. The letter dated October 17, 1984, lacks a specific demand for relief and lacks any enumeration of Wrongful Acts. It constitutes merely a general assertion that wrongdoing occurred.

Similarly, the letter dated November 21, 1984, does not contain a specific demand for relief. The Vermont Commissioner does state that if he ultimately prevails on claims against Ambassador Insurance's directors and officers, he will contest any amount paid out by National Union under the policy in connection with the *Michaels* action.[7] Thus, he impliedly asserts a right to the maximum amount that could be paid out under the policy in satisfaction of his claims. However, he fails to demand specific or full relief from the directors and officers for some particular wrongful act. Therefore, the letters do not constitute a claim made within the meaning of the policy.

### Section 7(c)

■ National Union [8], the Vermont Commissioner and the New York Liquidator contend that even if the letters from the Vermont Commissioner constitute only notice of an occurrence, the *Vermont* claim must nevertheless be satisfied with year one policy proceeds. They argue that pursuant to section 7(a) and 7(c), loss arising from the *Vermont* claim was incurred in year one when that notice was given to National Union. They further argue that the annual policy limit applies to losses incurred in each policy year, not losses arising from claims made in each policy year. The Michaels class coun-

ters that section 7(c) applies only to claims made after the expiration of the policy period and that the loss arising from the *Vermont* claim was incurred in year two when National Union was given notice of the claim made. The class further argues that the annual policy limit applies to losses arising from claims made in each year, not losses incurred in each year. The Court concludes that section 7(c) applies only to claims made after the expiration of the policy period and that, therefore, section 7(c) does not apply to the *Vermont* claim. The Court further concludes that the annual policy limit applies to losses arising from claims made each year. If successful, the *Vermont* claim, a claim made in year two, must therefore be satisfied with year two policy proceeds.

■ As the Court noted in *National Union I*, section 7(c) applies only in limited instances. It constitutes a savings or "claims after termination" clause, and it applies only to claims noticed pursuant to section 7(c)(i) or 7(c)(ii) and made after the expiration of the policy period.[9] *See Helfand v. National Union Fire Ins. Co.*, 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (1992) (construing section 7(c) of National Union policy as inapplicable to claims made during the policy period is consistent with the purpose of a coverage tail).[10] It provides "a mechanism for extend-

7. Specifically, the letter provides:
[Y]ou are advised that we regard the payment or reimbursement to [Ambassador] Group or its directors and officers of fees incurred in defending claims brought against them in the *Michaels* litigation to be contrary to the terms of the subject insurance policy. You are, therefore, placed on notice that, in the event the Commissioner as receiver for Ambassador ultimately prevails against Ambassador's former directors and officers on claims covered by the subject policy, we will contest any amount by which the policy limits are allegedly diminished as the result of having afforded the defense to, or otherwise provided policy coverage to, the *Michaels* defendants.
(Ex. I to Aff. of Barry A. Weprin, at 2.)

8. National Union alone and in support of its motion for summary judgment argues that the information Ambassador Insurance Group provided pursuant to paragraph 7(e) at the time the *Michaels* claim was made gave National Union notice pursuant to section 7(c) of the *Vermont* and *New York* claims. Thus, National Union argues it had either section 7(b) or 7(c) notice of all three claims within year one. Because the

Court rejects the argument that, pursuant to section 7(a) and 7(c), the date any type of notice is given sets the time loss arising from a claim is incurred, and the argument that the annual policy limit applies to loss incurred in a given year, the Court need not address this argument.

9. In *National Union I*, the Court noted in *dicta* that as support for National Union's argument that claims arising out of the same or interrelated acts are to be treated as a single claim, section 7(c) was "at best ambiguous." *National Union I*, 691 F.Supp. at 623. The Court, with the benefit of further briefing, now concludes that section 7(c) unambiguously applies only to claims made after termination.

10. Construing essentially the same National Union policy, the court in *Helfand* reasoned that because the policy does not provide a hierarchy of notice provisions, section 7(a) is ambiguous. It dictates that the time of loss be set to the date of notice, but does not indicate how to resolve apparent conflict between section 7(b) and 7(c) notice. Resolving the ambiguity in favor of the insureds, the *Helfand* court concluded that sec-

ing coverage beyond the policy period where 'facts and circumstances' that might give rise to a claim are known, but no 'claim' has been asserted against the insured." Harley, "Recent Decisions of Interest," in Director's and Officers' Liability Insurance, 333, 363–65 (Practicing Law Institute 1990). Typically, a claims after termination clause provides that if an insured becomes aware and gives notice to the insurer during the policy period of the occurrence of a specific wrongful act or of circumstances which could give rise to a claim, a claim subsequently made arising out of such wrongful act or circumstances will be deemed made "during the [p]olicy [p]eriod." *Id.* Because section 7(c) does not apply to claims made during the policy period, notice pursuant to it does not alter the year in which such claims are considered made or fix the time at which losses arising from them are incurred.[11] Section 7(c) operates only to bring claims made outside of the policy period within the period so that losses arising from them, if not otherwise excluded, may be covered. Thus, section 7(c) does not apply to the *Vermont* claim.

The specific language of section 7(c) supports this construction. The clause provides that if the company or the directors and officers give written notice to National Union of (i) notice of a third party's intention to hold the directors and officers responsible for the results of a Wrongful Act, or (ii) an occurrence which may give rise to a claim, then any claim subsequently made "will be treated as made during the currency [of the policy]." Claims made during the policy period are, by definition, claims made during the currency of the policy; they need not be "treated as" or deemed such. Significantly, section 7(c) does not provide that if notice to

the insurer is given pursuant to 7(c)(i) or 7(c)(ii) and a claim is subsequently made, the claim shall be deemed made at the time that notice was given. If the policy included such terms, section 7(c) could be meaningfully applied to claims made during the policy period to deem them made earlier in the period. Such provisions exist in other policies. *See, e.g., Gilliam v. American Casualty Co.,* 735 F.Supp. 345 (N.D.Cal.1990) (policy provides claim deemed made at the earlier of the giving of notice of the potential claim within the policy period or the filing of the actual claim within the policy period). Because such language is absent from the policy, section 7(c) has no effect when applied to claims made during the policy period. Accordingly, section 7(c) must apply only to claims made after the expiration of the policy.

Section 7(c) does not provide that notice pursuant to it satisfies the notice requirement set forth in section 7(b) as a condition precedent to indemnification. Thus, section 7(b) notice must be given to National Union when a claim previously noticed pursuant to 7(c) is actually made. Assuming arguendo that section 7(c) applies to claims made both during and after the policy period as part of the mechanism for fixing the time of loss pursuant to section 7(a), one type of notice, either notice pursuant to section 7(b) or notice pursuant to section 7(c), must be superior to the other in fixing the time. The policy does not supply any guidance for determining which type of notice should take precedence. National Union, the Vermont Commissioner and the New York Liquidator presume that notice pursuant to section 7(c) is superior. However, this presumption essentially transforms the policy into some-

tion 7(c) applies only to claims made after the expiration of the policy period. Because this Court concludes that section 7(c) does not apply to claims made during the policy period to fix the time a loss is incurred, conflict between the two types of notice does not arise.

11. Contrary to the Vermont Commissioner's contention (Mem. of Jeffrey P. Johnson in Resp. to Def. Michaels' Mot. for Partial Summ. J., at 20 n. 10), a claim made on the last day of the policy period for which section 7(b) notice of the claim

is given one day after termination is covered under the policy as this Court construes it. Section 7(b) requires that notice of a claim be given as soon as practicable as a condition precedent to the insured's right to be indemnified. It does not require notice to be given within the policy period. The policy at issue is a "claims made" policy, not a "claims made and reported" policy. *See* Harley, "Recent Decisions of Interest," in Director's and Officers' Liability Insurance, 333, 362–63 (Practicing Law Institute 1990).

thing akin to an "occurrence" policy.[12] As applied to a claim actually made after termination for which notice of occurrence was given during the policy period, the date on which the notice of occurrence was given would fix the time of loss and, therefore, the loss would always be incurred during the policy period. Thus, even if the directors and officers procured subsequent insurance that covered the claim, payment would be available under the National Union policy.[13] Section 4(g) of the policy, excluding payment of loss arising from a claim if at the time the loss is incurred, the claim is covered under another policy, would not apply. Because the policy is clearly a claims made policy, not an occurrence policy, the Court must reject the construction proposed by the Vermont Commissioner, the New York Liquidator, and National Union.

■ Finally, the Court rejects the argument that the annual policy limit applies to losses incurred in a given year rather than losses arising from claims made in a given year. Throughout the policy, "loss" and "claim" are used to denote different concepts. The two are related by the policy definition of loss, but, as reflected in the definition itself and in the insuring clause, they are not interchangeable. (*See* Policy ¶ 2(c) (" 'Loss' shall mean any amount which the insureds are legally obligated to pay for a claim or claims made...."); Policy ¶ 1 ("This policy shall ... pay ... loss ... arising from any claim or claims which are first made ... during the policy period....") Section 5(b) explicitly states that National Union's "liability for any claim or claims made against it shall ... be [$3,000,000] which shall be the maximum liability of [National Union] in ... each policy year." It does not provide, as it could have, that the maximum liability for losses incurred in each policy year shall be three million dollars. Thus, for purposes of applying the annual limit of liability, the significant date is the date on which the claim is

made. *See National Union Fire Ins. Co. v. Continental Illinois Corp.*, 673 F.Supp. 300 (N.D.Ill.1987) (court construed similar language and rejected argument that yearly policy limit applied to losses incurred in a given year); *but see Helfand*, 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (construing National Union policy and holding that time loss is incurred determines year for purposes of applying annual policy limit). Under this construction, a claim made near the end of the policy period for which timely 7(b) notice is given after the date of termination is paid with the proceeds available for claims made in the final year. If the annual policy limit applied to losses incurred in a given year, it is unclear which proceeds would be available; the loss arising from such a claim is a loss incurred after the date of termination. In addition, the Court's construction does not render the time a loss is incurred meaningless under the policy. As noted above, the policy does not cover loss arising from a claim which, at the time loss is incurred, is insured under another valid policy. (*See* Policy ¶ 4(g).)

In sum, section 7(c) is a savings provision that applies only to claims made after the expiration of the policy period. It is designed to extend coverage under limited circumstances, and the Vermont Commissioner, the New York Liquidator and National Union cannot employ it to reshuffle to their advantage the competing entitlements to the policy proceeds. Because the *Vermont* claim was made in 1985, it is a claim against the policy proceeds available for year two.

### Conclusion

For the reasons set forth above, the Court concludes that the claim underlying the *Vermont* action was made in 1985, year two of the policy, and is a claim against the year two policy proceeds. Accordingly, the Michaels class's motion for partial summary judgment is granted, and National Union's

---

**12.** Occurrence policies cover claims, whenever asserted, arising out of wrongful acts during the policy period.

**13.** When applying for claims made coverage, an insured is generally required to inform the insurer of every known potential claim. If the insured fails to disclose a known potential claim, the

insurer can avoid liability on that claim or, if the omission was material to the determination of the insurer's risk, the insurer may be able to rescind the policy. *See National Union Fire Ins. Co. v. Continental Illinois Corp.*, 673 F.Supp. 300, 304 & n. 9 (N.D.Ill.1987).

cross-motion for partial summary judgment is denied.

SO ORDERED.