**RETIREMENT FUND OF the FUR MANUFACTURING INDUSTRY by its Trustees Henry FONER, Jerry Kay, and Sidney Reiss, Plaintiff,**

v.

**REPUBLIC INSURANCE COMPANY, Defendant.**

**No. 88 Civ. 4445 (MGC).**

United States District Court, S.D. New York.

Feb. 1, 1991.

Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C. by Rodney F. Page, Ronald L. Castle, and Gaston & Snow, by Christopher O'Brien, New York City, for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker by Martin M. Ween, James L. Fischer, Albert A. Foster, Jr., Richard Lerner, New York City, for defendant.

CEDARBAUM, District Judge.

This is a diversity action for a declaratory judgment that a fiduciary liability policy issued to plaintiff by defendant covered the circumstances described in plaintiff's letter to defendant of December 11, 1986. The parties have submitted this case for judgment on stipulated facts.[1] For the reasons discussed below, plaintiff's letter did not report a "claim" within the meaning of the policy, but rather was notice of a potential claim which was not covered by the policy.

1. The paragraphs and exhibits of the Agreed Statement of Facts submitted by the parties are

## THE FACTS

### The Parties

The Retirement Fund of the Fur Manufacturing Industry is a multiemployer pension plan express trust administered by several trustees. Plaintiff's trustees are all citizens of either New York or New Jersey. Republic Insurance Company is incorporated in Delaware, with its principal place of business in Texas.

### The Policy

The policy is a "claims made" fiduciary liability insurance policy for claims made against plaintiff's trustees and employees. The policy covers three types of claims against the insureds. First, the policy covers claims made during the Policy Period. Second, under Article III, the policy covers claims made at any time after the Policy Period if, during the Policy Period, the insureds notify the insurer of an act or omission that may result in such claims. Third, if the Fund exercises the option to extend the policy under Article VII(c), the policy covers claims actually made during the twelve-month extension period. Plaintiff contends that its letter of December 11, 1986 is a claim of the third type.

Article I of the policy describes the coverage for claims made during the Policy Period. In that article, defendant agrees:

[t]o pay on behalf of the Insureds any Loss, subject to the limits of liability, as the Insureds acting in their capacity as Trustees or employees of the Trust described in the Declarations, shall become legally obligated to pay as damages for claim or claims which are first made against the Insureds, during the Policy Period by reason of any Wrongful Act, as defined herein, committed or alleged to have been committed by the Insureds or any person retained by the Insureds, while acting in any capacity directly connected with such Trust provided further that the Insureds had no knowledge of such Wrongful Act prior to the effective date of the Policy.

cited as ¶ ___ and Ex. ___.

¶ 1, Ex. 1. The Policy Period was from December 20, 1984 to December 20, 1985. ¶ 12, Ex. 1.

Article III, which is entitled "Claims Made Extension," addresses the coverage of claims made after the Policy Period. It states:

If during the Policy Period the Insured gives written notice to the Company of an act or omission which the Insured first believes may subsequently result in claim against him for which coverage would otherwise be afforded, then, any claim which is, in fact, subsequently made against the Insured for such act or omission shall be deemed to have been first made against the Insured during the Policy Period.

Ex. 1.

Article VII(c) gives the insureds the option to extend the policy for twelve months under certain circumstances by paying an additional premium and giving timely notice. Article VII(c) provides:

In the event of cancellation or non-renewal of this Policy as an entirety by the Company, this Policy may be extended by [the Fund] for an additional period of twelve (12) months after the effective date of cancellation or non-renewal at an additional premium ... for claims first made against such Insureds during the additional twelve (12) month period provided:

.    .    .    .    .

2) Written notice of the exercise of this option is given by [the Fund] to the Company within ten (10) days after the effective date of cancellation or non-renewal;
. . . .

Ex. 1. However, a claim made after the extension period is not covered even if defendant was notified during the extension period that the claim might be made later because Article VII(c)(4) states:

For purposes of such additional twelve (12) month period, coverage shall be applicable only with respect to claims first made against the Insureds during such additional period. The provisions of [Article] III of this Policy shall not be appli-

cable to such twelve (12) month period;
. . . .

*Plaintiff's Efforts to Renew the Policy*

Three months before the end of the Policy Period, defendant's agent, Professional Indemnity Agency, Inc. ("PIA"), sent a renewal notice and application to plaintiff's broker, Palmer–Tanno. ¶¶ 18, 19, Exs. 7(A), 7(B). The renewal application directed plaintiff to attach its most recent auditor's annual statement and Department of Labor ("DOL") Form 5500. ¶ 19, Ex. 7(B).

On December 10, 1985, Palmer–Tanno returned the renewal application form to PIA without the auditor's annual statement and DOL Form 5500. On December 16, 1985, PIA wrote to Palmer–Tanno, "We cannot proceed with renewal until we receive the latest certified audit and DOL Form 5500." ¶ 28, Ex. 12. On December 20, 1985, the policy expired by its terms. ¶ 30.

Although the policy had expired, the parties continued to discuss renewal. On December 26, 1985, PIA wrote to plaintiff, "As of today's date we have not received completed renewal applications and completed documentation ..., or your advices to proceed with renewal based upon quotations provided. Therefore, we must assume coverage is no longer desired, and are closing our files." ¶ 31, Ex. 13. On January 2, 1986, Fred Saporita, plaintiff's manager, had two telephone conversations with Nick Xanders of PIA. Xanders' notes of the conversations include the following:

I advised no coverage was in force at present and to send as much information as possible in by express for review. I further advised that without further explanation, there could be a major problem. . . . [Saporita] asked that if coverage was granted, is there a possibility the coverage would not be retroactive to 12/20. I advised the possibility was there.

¶ 36, Ex. 15. On January 7, 1986, Xanders wrote to Palmer–Tanno, "At this point in time, renewal coverage as of December 20th is an impossibility." ¶ 40, Ex. 17.

*Plaintiff's Efforts to Extend the Policy*

On January 14, 1986, Saporita advised PIA by letter that plaintiff's trustees wished to extend the policy under Article VII(c). ¶ 42, Ex. 19(A). Palmer–Tanno forwarded a check for the required premium to PIA two days later. ¶ 42, Ex. 19(b). On February 11, 1986, PIA returned the check to Palmer–Tanno with a letter that stated:

> We regret to advise that coverage expired on the normal anniversary of December 20, 1985. Therefore, the extension period is not available to the [Fund].

¶ 44, Ex. 20.

On December 11, 1986, plaintiff's counsel, Ronald Castle, sent a letter to defendant with the heading "Claim for Loss." ¶ 48, Ex. 23. The letter explained that the Fund's trustees had reason to believe that the Fund's investment managers from 1981 to 1984, H. David Grace and Grace Capital, Inc., had breached their fiduciary duties and caused a loss of approximately $2,000,-000. Further, "the Fund, through its Trustees," had sued Grace, but it appeared "that Grace may be unable to satisfy a judgment against him." The letter outlined plaintiff's "claim for loss" as follows:

> The [Fund], through its Trustees ... and by its undersigned counsel, hereby makes a claim for loss of approximately $2,000,000 under Articles III, VII(b), and VII(c) of the ... policy.
>
> . . . .
>
> Some or all of the insured Trustees under [the policy] were under obligation as named fiduciaries for the Fund to monitor Grace's compliance with his contract. These Trustees may accordingly be liable to the Fund for all or part of the losses not recovered from Grace.

Ex. 23. The letter also invited defendant to request the "particulars, and documentary evidence, respecting this claim" and proposed a tolling agreement between the Fund and defendant and the insured trustees "while the Fund seeks offsetting recovery from Grace." Ex. 23.

On September 6, 1988, an amended Order and Judgment was entered against H. David Grace and Grace Capital in the amount of $1,507,174. ¶ 50, Ex. 27. Grace and Grace Capital represented in that case that they are not able to satisfy the judgment against them. ¶ 52. On April 3, 1989, Jerry Kay and Sidney Reiss, two of the Funds' trustees, filed suit against certain former trustees for failing properly to monitor Grace's conduct. ¶ 53.

## DISCUSSION

Plaintiff argues that the sued former trustees are covered under Article VII(c) of the policy for any liability they may incur for failure to monitor Grace's activities. Under that article, plaintiff was required to exercise its extension option within ten days of "the effective date of cancellation or non-renewal" by the defendant. Plaintiff contends that non-renewal did not occur until it received defendant's letter of January 7, 1986 because that letter contained defendant's first unequivocal statement that renewal coverage retroactive to December 20, 1985 was not possible. Plaintiff sought to exercise the extension option on January 14, 1986, within ten days of defendant's letter. If it is assumed that plaintiff's request for an extension was both effective and timely, the December 11, 1986 letter was sent within the twelve-month extension period.

Defendant argues that plaintiff's loss is not covered for several reasons. First, plaintiff's attempt to extend the policy was not timely because "the effective date of cancellation or non-renewal" was December 20, 1985, the last day of the Policy Period. Second, defendant asserts that, even if "the effective date of cancellation or non-renewal" was not December 20th, it was no later than December 26th, when Xanders's letter informed Palmer–Tanno that "we are closing our files." Third, defendant contends that, even if plaintiff extended the policy in time, no claim was actually made against plaintiff's trustees during the extension period because plaintiff's December 11, 1986 letter reported a potential claim, not an actual claim.

An additional issue is whether plaintiff had the right to exercise the extension option under Article VII(c). That article provides for extension "[i]n the event of can-

cellation or non-renewal of this Policy as an entirety *by the Company....*" Ex. 1 (emphasis added). The parties disagree as to who "non-renewed" the policy. If plaintiff failed to renew the policy by not submitting all the documentation required for renewal, it would not have the right to extend the policy.

### No Claim Was Made Against An Insured During the Extension Period

I will focus first on whether plaintiff's December 11, 1986 letter constitutes a claim. Even assuming that plaintiff exercised its option to extend the policy for twelve months under Article VII(c) in a timely and effective manner, plaintiff cannot succeed if no claim was made against the insureds during the extension period. Plaintiff does not argue that any claim was made other than the December 11, 1986 letter. Instead, plaintiff contends that the December 11, 1986 letter itself was a claim against the insureds.

Whether plaintiff's letter was a "claim" depends on the meaning that that term is given in the policy. If the policy's provisions concerning claims are clear and unambiguous, they must be given "their plain and ordinary meaning." *Francis v. INA Life Insurance Company of New York,* 809 F.2d 183, 185 (2d Cir.1987); *Government Employees Insurance Company v. Kligler,* 42 N.Y.2d 863, 397 N.Y.S.2d 777, 778, 366 N.E.2d 865, 866 (1977).

Although the policy does not define the term "claim," I find that the policy gives it a clear and unambiguous meaning. The policy distinguishes between a claim and a potential claim. Articles I and VII indicate that a claim is a demand delivered to the insured or his representative. Article I states that a claim must be made "against the Insureds ...," and Article VII(b) requires that:

> [i]f claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

Ex. 1. Article III preserves coverage if, during the Policy Period, "the Insured gives written notice to the Company of an act or omission which the Insured first believes may subsequently result in claim against him...." Ex. 1. This language describes a potential claim.

Plaintiff defines a claim as "an assertion of a legal right by a third party against the insured," citing *National State Bank, Elizabeth, N.J. v. American Home Assurance Co.,* 492 F.Supp. 393, 396 (S.D.N.Y. 1980), and points out that a claim may be made without filing suit. This definition is not inconsistent with the meaning of the term under the policy. The issue is whether the December 11, 1986 letter is an assertion of a legal right against the insureds under Article VII or, rather, a notice to the insurer under Article III of an act or omission that may subsequently result in the assertion of a legal right against the insureds. If it is the latter, Article VII(c)(4) expressly excludes coverage.

Based on the stipulated facts and the plain meaning of the language of the policy, I conclude that the December 11, 1986 letter was not a claim made against the insured trustees. The policy contemplates that a claim against an insured will be sent to and "received by the [the Insured] or his representative." The letter was addressed and sent to the insurer, and not to the trustees against whom a claim was later made. Plaintiff's proposal for a tolling agreement does not alter the nature of the letter or the addressee.

Furthermore, plaintiff did not "immediately forward to the Company [a] demand, notice, summons or other process received by him or his representative," as the insureds were required to do under Article VII(b)(2) in the event of a claim. The letter did not have a demand attached, nor did it refer to a demand. The letter could not enclose a demand because plaintiff has not suggested that any demand was made apart from the letter.

The letter fits Article III's description of a notice to the insurer of a potential claim. Indeed, the letter states that the Fund "hereby makes a claim for loss ... under Articles *III,* VII(b), and VII(c) of the ... policy." (emphasis added). The letter in-

**630**

forms the insurer of possible omissions by unidentified insured trustees and warns that a legal right may be asserted against the insureds: "Some or all of the insured Trustees ... may accordingly be liable to the Fund for all or part of the losses not recovered from Grace."

Because I find that the letter was not a claim made against an insured during the twelve-month extension period, I do not address the other issues raised by the parties. Accordingly, the Clerk is directed to enter judgment for defendant and against plaintiff.

SO ORDERED.