[863 NYS2d 415]

In the Matter of the ANCILLARY RECEIVERSHIP OF RELIANCE INSURANCE COMPANY. THE YALE CLUB OF NEW YORK CITY, INC., Respondent, v RELIANCE INSURANCE COMPANY, by the SUPERINTENDENT of INSURANCE, as Ancillary Receiver, Appellant.

First Department, September 2, 2008

44

**APPEARANCES OF COUNSEL**

*Herzfeld & Rubin, PC,* New York City (*David B. Hamm* and *Abraham David* of counsel), for appellant.

*Cone & Kilbourn,* Mount Kisco (*Joseph A. Kilbourn* of counsel), for respondent.

**OPINION OF THE COURT**

Том, J.P.

At issue is whether a letter received by an insured constitutes a "claim" within the meaning of a claims-made insurance policy. Although the term is undefined in the insurance contract, defendant Superintendent of Insurance, as Ancillary Receiver for Reliance Insurance Company, contends that case law dictates that the letter be treated as a claim. Since there is an ambiguity as to what constitutes a claim under the Reliance policy, such ambiguity must be construed against the insurer under the doctrine of contra proferentem. In the context of ongoing attempts by the union representing the insured's employees to resolve the parties' dispute, the letter, which neither makes any demand for payment nor advises that legal action will be forthcoming, is insufficient to state a claim.

Plaintiff Yale Club of New York was the insured under two "claims-made" insurance policies issued by Lloyds, London and Reliance, providing directors and officers liability coverage for the years ending on November 23, 1993 and November 23, 1994, respectively. In August 1993, while plaintiff was insured under the Lloyds policy, it received a letter from an attorney representing certain waiters and other employees at the Yale Club who alleged to have been "deprived of tips and bonuses." The letter requested information to enable compliance with counsel's stated "obligation to make a reasonable inquiry into the facts before filing a pleading with the courts." There is no evidence

that plaintiff ever notified Lloyds about the letter. In February 1994, after coverage had commenced under the Reliance policy, the attorney instituted an action against plaintiff on behalf of 13 Yale Club employees represented by his firm.[1] Plaintiff notified the insurer of the claim the following month. Reliance disclaimed coverage in April 1994 on the ground that the August 1993 letter (which defendant terms "The Originating Letter") constituted notice of a claim made. After Reliance went into liquidation, defendant, as Ancillary Receiver on behalf of the Liquidation Bureau of the New York State Insurance Department (Insurance Law § 7404), resisted payment of plaintiff's claim for indemnification of its litigation expenses.

The issue of the August 1993 letter's effect on the insurer's liability to plaintiff was submitted to a Referee, who found that "the letter was merely a request for information; the claim was properly filed after the Reliance coverage began." In opposition to plaintiff's motion to confirm the Referee's report, defendant took the same position as he does on appeal: "The waiters' claims against The Club here were first made in The Originating Letter, three months prior to and completely outside of the policy period and were therefore clearly outside of the policy coverage." Defendant relied on the limitation contained in section I of the Reliance policy and in a notice printed at the top of the policy endorsements, which states, "Except as may be otherwise provided herein, the coverage of this policy is limited to liability for acts for which claims are first made against the insured while the policy is in force." Defendant also invoked section VII of the policy, entitled "Notice of Claim," which provides:

> "A. If, during the Policy Period . . . the Company or the Directors and Officers:

> "(1) shall receive written or oral notice from any party that it is the intention of each [sic] party to hold the Directors and Officers, or any of them, responsible for a Wrongful Act; or

> "(2) shall become aware of any occurrence which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a Wrongful Act;

---

1. Counsel also commenced a 1996 action in Bronx Supreme Court and a 1999 action in Federal District Court for the Southern District of New York.

"and if the Company or Directors and Officers shall in either case during such period give written notice as soon as practicable to the Insurer . . . then any claim which may subsequently be made against the Directors or Officers arising out of such Wrongful Act, shall, for the purpose of this policy, be treated as a claim made during the Policy Year."

Defendant contended that the August 1993 letter constitutes a claim made against the Yale Club's officers and directors. Noting that, at the time counsel's letter was received by plaintiff, the employees' union had accused the Club of financial improprieties, defendant argued that in context the letter "could not have been viewed in any other light than as a claim." Defendant concluded that because the letter was received prior to the date the policy commenced, the claim arose outside the policy period, and the insurer was under no obligation to reimburse plaintiff for its defense and settlement costs.

As the Court of Appeals has observed, "The best evidence of what parties to a written agreement intend is what they say in their writing" (*Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]). Where the meaning of the contract language is clear and unambiguous, it is determined by the court as a matter of law (*Hartford Acc. & Indem. Co. v Wesolowski*, 33 NY2d 169, 171-172 [1973]). Courts must neither add, excise nor modify the terms of an agreement; nor may a court distort the meaning of an agreement under the guise of interpretation (*see Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]). Where the contract at issue is an insurance policy, any exclusion from coverage must be stated unambiguously (*see Oot v Home Ins. Co. of Ind.*, 244 AD2d 62, 69 [1998]), and any ambiguity must be resolved against the insurer as drafter of the policy's language (*see Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326 [1996]).

The operative question before this Court is the meaning to be ascribed to the word "claim," a term that defendant concedes is undefined in the Reliance policy. While the disputed letter certainly conveys the suggestion that a lawsuit was being contemplated, it also states unequivocally that counsel was seeking information in connection with his obligation to determine whether legal action was warranted. Moreover, the letter does not even state that the purpose of any such action would be the recovery of civil damages, merely alleging that the Yale Club's actions variously "constitute criminal violations, as well as civil

violations of RICO and the New York State Labor Law, and fraud and conversion."

The failure of the Reliance policy to provide any definition of "claim" presents an ambiguity that defendant invites this Court to resolve by speculating as to the parties' intent. This approach must be rejected because New York law ascribes no generally accepted meaning to the term in the context of a claims-made policy (*see Andy Warhol Found. for Visual Arts, Inc. v Federal Ins. Co.*, 189 F3d 208, 215 [1999] [purporting to resolve the ambiguity by formulating a definition "gleaned" from federal case law]). In those New York cases involving the issue of when a claim arose for the purposes of coverage, the term has been defined in the policy as, for instance, "a demand received by the Insured . . . for money or services" (*Evanston Ins. Co. v GAB Bus. Servs.*, 132 AD2d 180, 185 [1987]; *see also Purcigliotti v Risk Enter. Mgt. Ltd.*, 240 AD2d 205, 206 [1997]; *Heen & Flint Assoc. v Travelers Indem. Co.*, 93 Misc 2d 1, 4 [1977] [" 'Claim' includes a judgment, arbitration award or any demand for money or services resulting from an actual or alleged act or omission covered hereunder"]).

Counsel's letter to plaintiff falls far short of a demand for money or services (*Retirement Fund of Fur Mfg. Indus. by Foner v Republic Ins. Co.*, 755 F Supp 625 [SD NY 1991], *affd* 948 F2d 1275 [2d Cir 1991]), or even the expression of a present intent to initiate legal proceedings (*see In re Ambassador Group, Inc. Litig.*, 830 F Supp 147, 155 [ED NY 1993]). Any action that might have been contemplated in pursuit of the employees' claim is implicitly conditioned upon the outcome of counsel's investigation of its merit. Thus, the letter received by plaintiff is not "an assertion of legally cognizable damage, . . . a type of demand that can be defended, settled and paid by the insurer" (*Evanston Ins. Co.*, 132 AD2d at 185).

Supreme Court properly confirmed the Referee's finding that section VII of the Reliance policy is immaterial to the question of whether the letter constitutes a claim. Since the notice of claim provision of section VII (A) (1) is expressly limited to "written or oral notice" received "during the Policy Period," and it is undisputed that the letter was received *prior* to the effective date of the policy, subsection (1) is inapposite by its express terms.

Arguably, the letter was sufficient to make plaintiff aware of "occurrence[s] which may subsequently give rise to a claim being made," thereby obliging plaintiff to give Reliance notice

of the potential claim "as soon as practicable." Thus, as the dissenters argue, it could be said that plaintiff, having been in possession of purported notice of the potential claim at the inception of the policy period on November 23, 1993, but having failed to give notice of the claim to Reliance until March 1994, defaulted on its obligation to give the insurer notice "as soon as practicable" under section VII (A) (2) of the notice provision. However, defendant did not advance this basis for avoiding liability under the policy before Supreme Court; nor does defendant raise it on appeal, confining his argument in both instances to the assertion that the claim arose outside the policy period. Thus, the issue of the timeliness of the notice of claim is not preserved for appellate review (*see Telaro v Telaro*, 25 NY2d 433, 438 [1969]; *Recovery Consultants v Shih-Hsieh*, 141 AD2d 272, 276 [1988], citing *Huston v County of Chenango*, 253 App Div 56, 60-61 [1937], *affd* 278 NY 646 [1938]), and defendant is barred from raising it (*see Oot*, 244 AD2d at 71).

Defendant does not contend that coverage is precluded by any exclusion contained in the Reliance policy. As pertinent to this dispute, section V excludes any loss "which is insured by another valid policy" or "for which the Directors and Officers are entitled to indemnity and/or payment by reason of having given notice of any circumstances which might give rise to a claim under any policy or policies the term of which has expired prior to the inception date of this policy." Since there is no indication that plaintiff gave notice to Lloyds of the employees' claim and since neither the Lloyds policy nor any other affords coverage, these exclusions are inapplicable. Defendant's sole basis for seeking reversal of the judgment against the Liquidation Bureau is his contention that the claim arose prior to the inception of the Reliance policy and, thus, outside the scope of its coverage.

■ Defendant's contention lacks a sound factual predicate. To sustain his attack on the judgment would require this Court to assign an expansive meaning to the term "claim" under uncertain and contentious circumstances. It is uncontested that the workers on whose behalf the letter sought information were represented by a union, and it is apparent that the union was engaged in efforts to resolve the dispute on their behalf and on behalf of the rest of its members employed at the Yale Club. Plaintiff's mere awareness that an action was being contemplated by the attorney for the 13 Yale Club employees was hardly tantamount to notice that an action would be brought, since his investigation could have revealed that suit was unwarranted or

subsequent events could have rendered an action unnecessary. The *mere awareness of alleged wrongdoing is not a* "claim" within the meaning of the typical claims-made policy (*see Purcigliotti*, 240 AD2d at 206).

Defendant's contention that the letter is a claim relies on the happenstance that an action was ultimately commenced, and it depends wholly on post hoc ergo propter hoc reasoning.[2] Without the advantage of hindsight, defendant's contention that the "letter must be recognized as containing a claim first made prior to the policy period, rendering subsequent pleading of that claim outside the coverage of the policy" must be rejected as speculative.

While, at the time of the August 1993 letter, plaintiff was aware of facts that might possibly have led to litigation, it was equally aware of, and participating in, ongoing negotiations with the employees' union, which included alternative dispute resolution. As defendant conceded in opposition to plaintiff's motion, the claim purportedly communicated in counsel's letter was asserted only on behalf of certain Yale Club employees who "did not want to be represented by Local 6," the Hotel, Restaurant & Club Employees and Bartenders Union. In view of the union's participation in efforts to resolve the dispute, it was by no means clear that independent legal action by some of its members would be necessary, appropriate or even permissible under the terms of the governing collective bargaining agreement.[3] Even if plaintiff could be said to have been aware of the viability of an action limited to those employees disaffected by the union's representation of their interests, a fact not in evidence, settlement of the dispute or legal action undertaken by the union itself would have obviated any such independent lawsuit. Under these circumstances, the subject letter requesting documents and information in support of counsel's "inquiry into the facts" does not suffice to state a demand for payment so as to warrant the conclusion that a claim arose at such time (*Evanston Ins. Co.*, 132 AD2d at 185).

---

**2.** In fact, several actions were commenced asserting most of the grounds mentioned in the letter. The merit of the various causes of action was never judicially determined since the parties entered into a stipulation resolving the litigation.

**3.** A federal lawsuit was brought by the union alleging deficiencies in plaintiff's contribution to various union funds. It was discontinued with prejudice by stipulation dated August 4, 1993 in favor of alternative dispute resolution.

*American Ins. Co. v Fairchild Indus., Inc.* (56 F3d 435 [2d Cir 1995]), relied upon by the dissenters, does not require a contrary result. In that case, involving insurance coverage for an environmental violation, discussions conducted well before the manufacturer received the letter alleged to constitute a claim made it clear that the New York State Department of Environmental Conservation intended to require Fairchild Industries to remedy the environmental hazard. The court specifically declined to hold the letter to be a "claim" (a term similarly undefined in the policy) "because no New York case has as of yet addressed that precise issue" (*id.* at 440).

The Circuit Court presumed to draw a distinction between the effect of a notice of "claim" and a notice of "occurrence" with respect to the insured's obligation to notify the carrier. This approach was specifically rejected in *Reynolds Metal Co. v Aetna Cas. & Sur. Co.* (259 AD2d 195 [1999] [involving primary liability insurance policies]), in which the Third Department stated:

> "we perceive no reason why a failure to give a timely notice of claim should not be excused by an insured's good-faith belief in nonliability or noncoverage. It appears illogical that insureds should be required to promptly notify insurers of every claim no matter how remote the possibility of liability or coverage but be excused from doing so if a reasonable evaluation of an occurrence yields the same conclusion" (*id.* at 201).

As a final point, the language of the Reliance policy's notice of claim provision does not assist defendant's attempt to exclude plaintiff's loss from coverage. The provision only applies if the insured "during the Policy Period . . . *shall become aware* of any occurrence which may subsequently give rise to a claim being made" (emphasis added). It does not by its terms exclude a claim of which the insured *had become aware* prior to the effective date of the policy (*cf. Fogelson v Home Ins. Co.*, 129 AD2d 508, 509 [1987] [explicitly excluding "any acts or omissions occurring prior to the effective date of this policy if the Insured at the effective date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit"]). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case" (*Continental*

*Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652 [1993]).
The notice of claim provision is not an exclusion, does not apply
by its express language and is therefore subject to a contrary in-
terpretation.

Accordingly, the order and judgment (one paper) of the
Supreme Court, New York County (Michael D. Stallman, J.),
entered February 23, 2007, which confirmed a Referee's report
finding coverage under the subject policy and awarded damages
in favor of plaintiff insured and against defendant, should be af-
firmed, without costs.

CATTERSON, J. (dissenting). Because in my opinion the at-
torney's letter of August 12, 1993 on behalf of the nonparty
Yale Club waiters constituted a claim, and that claim was made
outside the subject policy period, I respectfully dissent. I believe
that disclaimer of coverage by Reliance was warranted, and that
therefore the order appealed should be reversed.

The issues in this case arise out of a "claims-made" insurance
policy (hereinafter referred to as the policy) issued by Reliance
Insurance Company (hereinafter referred to as Reliance) to The
Yale Club of New York City, Inc. (hereinafter referred to as the
Yale Club). The policy's effective dates were from November 23,
1993 through November 23, 1994. It covered only "claims first
made during the policy period."

In the policy, the term "claim" was not defined. "Loss" was
defined as "any amount which the directors and officers [were]
legally obligated to pay" because of their "[w]rongful [a]cts."
Reliance obligated itself to pay "all Loss" that arose from the
directors/officers' wrongful acts associated with claims that
were "first made during the policy period." Section VII of the
policy, entitled "Notice of Claim," provided in relevant part
that:

> "A. If, during the [p]olicy [p]eriod or [d]iscovery
> [p]eriod, the [c]ompany or the [d]irectors and [o]f-
> ficers:

> "(1) shall receive written or oral notice from any
> party that it is the intention of each party to hold
> the [d]irectors and [o]fficers, or any of them,
> responsible for a [w]rongful [a]ct; or

> "(2) shall become aware of any occurrence which
> may subsequently give rise to a claim being made
> against the [d]irectors and [o]fficers, or any of them,
> for a [w]rongful [a]ct,

"and if the [c]ompany or [d]irectors and [o]fficers shall in either case during such period give written notice as soon as practicable to the [i]nsurer . . . then any claim which may subsequently be made against the [d]irectors or [o]fficers arising out of such [w]rongful [a]ct, shall, for the purpose of this policy, be treated as a claim made during the [p]olicy [y]ear."

On August 12, 1993, more than three months prior to the Reliance policy period, the Yale Club received a letter (hereinafter referred to as the Letter) from an attorney representing 11 Yale Club waiters "with respect to wage claims."[1]

The Letter arrived after a series of conversations between the Yale Club and the waiters' union regarding allegations made by the waiters concerning wrongfully distributed commissions. The Letter was sent on behalf of a group of waiters who had declined union representation regarding their individual claims.[2]

From its very first sentence, the Letter could not have been a plainer statement that its subject matter was the claim being made on behalf of certain named employees of the Yale Club. The sentence read: "Please be advised that our office represents the above named employees of the Yale Club with respect to wage claims." In the Letter, the waiters claimed, among other things, "that they [had] been deprived of tips and bonuses which amount to hundreds of thousands, and probably, millions, of dollars." The Letter further alleges that "[t]he deprivation of these monies constitute[s] criminal violations, as well as civil violations of RICO and the New York State Labor Law, and fraud and conversion." It requests 13 sets of relevant documents and information, as well as insurance information. Significantly, the Letter states that pursuant to court rules "counsel is under an obligation to make a reasonable inquiry into the facts before filing a pleading with the courts." It is reasonable to assume that were it not for "court rules," counsel would have already filed the summons and complaint.

Subsequently, on February 14, 1994, the waiters commenced an action in the District Court for the Southern District of New

---

1. At the time the Letter was received in August 1993, the Yale Club had a one-year insurance policy with nonparty Lloyds, London, effective November 23, 1992 through November 23, 1993.

2. It is clear that the Yale Club was aware that these waiters had declined union representation by virtue of a letter sent by the Yale Club to the vice-president of the waiters' union on May 5, 1993 which acknowledged that several waiters "did not want to be represented by [the union]."

York alleging tip withholding, denial of wages, nonpayment of overtime, RICO violations and racial discrimination. On February 22, 1994, upon receipt of the summons and complaint, the Yale Club notified Reliance. On April 12, 1994, Reliance denied coverage on the grounds that the claims against the Yale Club were first made in the Letter and therefore were made prior to the policy period.

On April 7, 2000, the Yale Club settled with the waiters for $370,000. Shortly thereafter Reliance went into liquidation and the Yale Club submitted a proof of loss to its Ancillary Receiver for the sum of the $370,000 settlement, plus $405,005.07 in attorney fees, as well as interest at 9% from May 2000. Like Reliance, the Ancillary Receiver of Reliance asserted that the date of the Yale Club's receipt of the Letter constituted the date upon which the waiters' claims were first made, and, since this date occurred prior to the policy period, denied coverage.

The Yale Club and the Ancillary Receiver attended a hearing on June 13, 2006, which culminated in a written decision dated August 17, 2006. In the decision, the referee determined that the Yale Club's claim was covered by the Reliance policy. Specifically, the referee determined that the Letter "was merely a request for information" and that the claim was properly filed after the Reliance coverage began.

Upon the Yale Club's motion to confirm, the court upheld the referee's decision. The court did not determine whether the Letter constituted a claim. Rather, the court determined "that the [L]etter might have otherwise constituted a notice of claim under Section VII had it been sent during the policy period does not lead to the flawed conclusion that it was a notice of claim outside the policy period."

On appeal, the Ancillary Receiver maintains that the content of the Letter supports a finding that the Letter was "a claim" made, and that such claim predated the Reliance policy and, thus, fell outside its coverage. The Club, relying on *In re Ambassador Group, Inc. Litig.* (830 F Supp 147 [ED NY 1993]), argues that the Letter was not "a claim" because the Letter did not make a demand for specific relief. Rather, the Yale Club asserts that the Letter "merely requested some documents and information." While indicating indirectly that there was a possibility of a future lawsuit, the Letter was, essentially, a mere inquiry. The Yale Club argues that it properly gave notice of "a claim" to Reliance upon its receipt of a summons and complaint, which was after the policy period had started to run and thus, it is entitled to recovery from Reliance.

For the reasons set forth below, I agree with the position taken by the Ancillary Receiver on behalf of Reliance. It is well settled that an insurance policy is a contract between the insurer and the insured and governs the agreement between them. (*See White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007] [equating insurance policies with other written contracts], citing *Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 520 [1996].) Thus, Reliance, pursuant to the terms laid out in the policy, contractually obligated itself to cover only those claims that were first made within the policy period.

The majority's assertion that the only issue on this appeal is whether there was a claim made during the policy period is incorrect. That would be a facile analysis since it is uncontested that the Yale Club informed Reliance of the summons and complaint during the policy period. The relevant question, however, is whether there was a claim made *prior to* the Reliance policy period such that Reliance may properly deny coverage because a claim was *first* made outside of the policy period. In my opinion, there was just such a claim made prior to the policy period in the Letter.

Courts have long recognized that undefined, unambiguous terms in an insurance policy are given their ordinary meaning. (*White*, 9 NY3d at 267.) Here, even though the word "claim" is not specifically defined in the Reliance policy, "claim" should be given its ordinary understanding of a demand by a third party against the insured for money .damages or other relief owed. (*See e.g. American Ins. Co v Fairchild Indus., Inc.*, 56 F3d 435, 439 [2d Cir 1995] [where the court interpreted a standard New York claim provision as being "an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risk covered by policy" and stated that "(a claim) 'must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer' " (quoting *Evanston Ins. Co. v GAB Bus. Servs.*, 132 AD2d 180, 185 [1st Dept 1987] [where "a claim" was specifically defined in the agreement])]; *see also Home Ins. Co. of Ill. [N.H.] v Spectrum Info. Tech., Inc.*, 930 F Supp 825, 846 [ED NY 1996] [stating that "the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed"], citing *In re Ambassador Group*, 830 F Supp at 155.)

In my view, to treat the Letter as anything other than a "claim" would require this Court to ignore the entire substance

of the Letter. The second paragraph of the Letter commences: "They claim, among other things, that they have been deprived of tips and bonuses which amount to hundreds of thousands, and probably, millions, of dollars." The paragraph continues to enumerate four ways the third-party waiters suspected that their wages and tips were being improperly withheld. The Letter continues with the claim that "[t]he deprivation of these monies constitute[s] criminal violations . . . and fraud and conversion."

The fact that the waiters claimed that the Yale Club was guilty of conversion of their tips is necessarily the equivalent of demanding remuneration for those tips. (*See* PJI 3:10 ["A person who, without authority, intentionally exercises control over the property of another person and thereby interferes with the other person's right of possession has committed a conversion and is liable for the value of the property"].)

Moreover, the Letter did not arrive in a vacuum: it arrived after a meeting between the Yale Club and the waiters' union, after an attempted arbitration and after a discontinued lawsuit all regarding matters that were clearly related to the claims asserted in the Letter. Finally, the Letter describes itself as a mere court-mandated precursor to a lawsuit.

Further, I contend that both the Yale Club and the majority improperly cite to the nonbinding U.S. District Court opinion in *Ambassador* to support their contention that the Letter was not a claim because it was not a "demand for money or services." In *Ambassador*, the state insurance commissioner sent two letters to the insurer stating that he "ha[d] uncovered facts which [led] him to conclude that certain former directors and officers were guilty of acts falling within the scope of coverage afforded by the . . . policy." (*In re Ambassador Group, Inc. Litig.*, 830 F Supp at 151.)[3] The policy did not define the term "claim" and the District Court held that neither of the two letters in ques-

---

3. More specifically, the first letter stated that the "Commissioner ha[d] uncovered facts which [led] him to conclude that certain former directors and officers were guilty of acts falling within the scope of coverage afforded by the . . . policy, resulting in losses to the estate of the Ambassador." (*Id.*) The letter concluded that National Union was thereby "given notice of a claim." (*Id.*) The second letter stated,

> "[L]et me assure you that we have read carefully and researched thoroughly the coverages available under the subject policy. We are also aware that claims pressed against directors and officers on behalf of the Commissioner as receiver are to be presented directly to those directors and officers. We have written you in

tion constituted a claim as the term is normally viewed. (*Id.* at 154-155.)

In reaching its decision, the *Ambassador* court relied heavily upon the fact that the policy characterized the reporting of a "claim" to the insurer as *giving notice* and the reporting of a "claim" directly to the directors and officers as the *making* of a claim. (*Id.* at 154.) The court also relied upon the fact that the letters under evaluation did not specify an alleged wrongdoing nor did they contain a demand for relief. (*Id.* at 155.) Thus, the *Ambassador* court found that the letters in question did not constitute a claim. (*Id.* at 156.)

Notwithstanding, *Ambassador* is distinguishable from the instant case insofar as in this case, the Letter very clearly alleges wrongdoing. Furthermore, in *Ambassador*, the letters were sent to the insurance company and here, the Letter was sent *directly* to the directors and the officers of the Yale Club who had knowledge of the ongoing dispute with the waitstaff over tips. This fact clearly undercuts the majority's characterization that the Letter constituted merely a notice of a potential claim. (*See also Retirement Fund of Fur Mfg. Indus. by Foner v Republic Ins. Co.*, 755 F Supp 625 [SD NY 1991], *affd* 948 F2d 1275 [2d Cir 1991] [disputed letter was not found to be a "claim" in part because the letter was sent to the insurer and not the party against whom a claim was later made].)

Finally, in my opinion, the majority is mistaken in taking its analysis no further than the determination that the summons and complaint filed during the policy period are the only relevant "claim." Under the majority's interpretation of the contract, since the summons and complaint constitute the claim, then the Letter would have triggered an obligation of notice of claim to Reliance pursuant to section VII (A) (1) had it arrived during the policy period. Obligation to give notice of a claim "as soon as practicable" would also have been triggered by the Club's officers and directors *becoming aware* (during the policy period) *of an occurrence* that could give rise to a claim. The majority's position is that neither eventuality occurred here.

However, the Club's officers and directors were certainly aware by the time they received the Letter that the dispute with the waiters would give rise to a lawsuit. The fact that they were aware of this by the first day of the policy period rather

accordance with the policy provision regarding notice of occurrence and to allow you an opportunity to commence any investigation you feel necessary." (*Id.* at 151-152.)

than *becoming* aware of it on the first day of the policy period is a metaphysical distinction that should not be argued here and should not foreclose the insurer's right to disclaim coverage. It would be the height of absurdity to differentiate between the acts of *becoming* aware and *being* aware of an occurrence as of the policy period. It is undisputed that as of the start of the policy period with Reliance, the Yale Club was aware that a lawsuit was pending on the grounds of alleged wrongdoings by its officers and directors. This triggered the obligation pursuant to the terms of the policy to give the insurer notice as soon as practicable, that is on the first day of the policy period, thus allowing the insurer the option of rescinding or cancelling the policy or excluding the event from coverage.

MOSKOWITZ and ACOSTA, JJ., concur with TOM, J.P. FRIEDMAN and CATTERSON, JJ., dissent in a separate opinion by CATTERSON, J.

Order and judgment (one paper), Supreme Court, New York County, affirmed, without costs.