# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**352**

**CA 13-01387**

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, LINDLEY, AND VALENTINO, JJ.

---

SPOLETA CONSTRUCTION, LLC, PLAINTIFF-APPELLANT,

V

MEMORANDUM AND ORDER

ASPEN INSURANCE UK LIMITED, C/O ASPEN SPECIALTY
INSURANCE MANAGEMENT COMPANY, DEFENDANT-RESPONDENT,
1255 PORTLAND, LLC, HUB-LANGIE PAVING, INC., AND
SHANE VANDERWALL, DEFENDANTS.

---

WHITE FLEISCHNER & FINO, LLP, NEW YORK CITY (JANET P. FORD OF
COUNSEL), FOR PLAINTIFF-APPELLANT.

LEWIS BRISBOIS BISGAARD & SMITH LLP, NEW YORK CITY (STEPHANIE A.
NASHBAN OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---

Appeal from a judgment (denominated order) of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered November 26, 2012 in a declaratory judgment action. The judgment granted the motion of defendant Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company to dismiss plaintiff's complaint against it.

It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, the motion is denied, and the complaint is reinstated against defendant Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company.

Memorandum: Defendant Shane VanDerwall commenced the underlying negligence action against plaintiff and others seeking damages for injuries he sustained on October 20, 2008, during the course of his employment on a construction project. Plaintiff, the general contractor on the project, subcontracted with VanDerwall's employer, defendant Hub-Langie Paving, Inc. (Hub-Langie), to perform paving work on the project. Pursuant to the subcontract, Hub-Langie agreed to defend and indemnify plaintiff for all claims arising out of Hub-Langie's work. Hub-Langie also agreed to name plaintiff as an additional insured on its commercial general liability insurance policy, which it did by an endorsement to its policy with Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company (defendant). The endorsement covered "any person or organization . . . when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy."

It is undisputed that plaintiff did not receive notice of the

accident until late December 2009 in a letter from VanDerwall's attorney.  On January 27, 2010, plaintiff's liability carrier sent a letter to Hub-Langie notifying it of VanDerwall's "claim," noting Hub-Langie's contractual agreement to defend and indemnify plaintiff, and requesting that Hub-Langie put its own insurance carrier on notice to allow the carrier to conduct its own investigation.  On February 9, 2010, Hub-Langie sent defendant a "General Liability Notice of Occurrence/Claim" form regarding VanDerwall's alleged injury, with the January 2010 letter attached.  By February 22, 2010, defendant had requested and received a copy of the contract between Hub-Langie and plaintiff containing the defense, indemnification and additional insured requirements.  After VanDerwall commenced the underlying action on April 15, 2010, plaintiff's counsel demanded that defendant defend and indemnify it in the underlying action by letter dated May 27, 2010.  Defendant disclaimed coverage to plaintiff on the basis of untimely notice by letter dated June 2, 2010.

Plaintiff thereafter commenced this declaratory judgment action seeking a declaration that defendant is obligated to provide insurance coverage to plaintiff in the underlying action.  Defendant moved to dismiss the complaint against it pursuant to CPLR 3211 (a) (1) and (7), and Supreme Court granted the motion.  We reverse, deny the motion, and reinstate the complaint against defendant.

It is well settled that, "[i]n determining a dispute over insurance coverage, we first look to the language of the policy" (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221).  "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . , and the interpretation of such provisions is a question of law for the court" (*White v Continental Cas. Co.*, 9 NY3d 264, 267).  "If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer" (*id.; see Christodoulides v First Unum Life Ins. Co.*, 96 AD3d 1603, 1604-1605).  Further, "[n]otice requirements are to be liberally construed in favor of the insured, with substantial, rather than strict, compliance being adequate" (*Greenburgh Eleven Union Free Sch. Dist. v National Union Fire Ins. Co. of Pittsburgh, PA*, 304 AD2d 334, 335-336).

Here, under the heading **"Duties in The Event Of Occurrence, Offense, Claim Or Suit**," the policy provides that the insured "must *see to it that we are notified as soon as practicable* of an '*occurrence*' or an offense which may result in a claim.  To the extent possible, notice should include:  (1) How, when and where the '*occurrence*' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the '*occurrence*' or offense" (emphasis added).  The policy further provides that, "[i]f a *claim* is made or '*suit*' is brought against any insured, you must:  (1) Immediately record the specifics of the claim or 'suit' and the date received; and (2) *notify [defendant] as soon as practicable. You must see to it that we receive written notice of the claim or 'suit' as soon as practicable*" (emphasis added).

Initially, we conclude that the December 2009 letter was a notice of an "occurrence . . . which may result in a claim" and not a "claim" under the policy. The terms "occurrence," "claim," and "suit" are separately used in the policy, and thus each term must be " 'deemed to have some meaning' " (*Bretton v Mutual of Omaha Ins. Co.*, 110 AD2d 46, 49, *affd* 66 NY2d 1020; *see generally American Ins. Co. v Fairchild Indus., Inc.*, 56 F3d 435, 439). The policy defines "[o]ccurrence" as "an accident." The term "[c]laim" is not defined in the policy, but such term has been interpreted to mean " 'an assertion of legally cognizable damage,' " i.e., " 'a type of demand that can be defended, settled and paid by the insurer' " (*Matter of Reliance Ins. Co.*, 55 AD3d 43, 47, *affd* 12 NY3d 725; *see generally American Ins. Co.*, 56 F3d at 439). Here, the December 2009 letter "neither makes any demand for payment nor advises that legal action will be forthcoming" (*Reliance Ins. Co.*, 55 AD3d at 44). Rather, the letter advised plaintiff that VanDerwall had retained an attorney in connection with personal injuries he had sustained during the course of his work on the construction project, requested that plaintiff forward the letter to its insurance carrier, and warned plaintiff that failure to notify its carrier could result in a denial of coverage and "personal responsibility for any obligations that may arise" from VanDerwall's accident.

We further conclude that the January 2010 letter and form that Hub-Langie sent to defendant at plaintiff's request satisfied the insured's duty under the policy to "see to it" that defendant was notified of the occurrence "as soon as practicable" (*see United States Underwriters Ins. Co. v Falcon Constr. Corp.*, ___ F Supp 2d ___, ___; 2003 WL 22019429, *5). Contrary to the court's conclusion, the policy did not require that written notice of an occurrence come directly from plaintiff; it simply required that plaintiff "see to it" that defendant was "notified" (*see id.; see also New York Tel. Co. v Travelers Cas. & Sur. Co. of Am.*, 280 AD2d 268, 268). Moreover, to the extent that the phrase "see to it that we are notified" is ambiguous, that ambiguity must be construed in plaintiff's favor (*see White*, 9 NY3d at 267). Inasmuch as the January 2010 letter constituted notice of an "occurrence," we conclude that the May 2010 letter constituted notice of a "claim" or "suit" based upon VanDerwall's April 15, 2010 commencement of the underlying action. We therefore agree with plaintiff that the court erred in dismissing the complaint against defendant inasmuch as the documentary evidence does not conclusively establish a defense to plaintiff's claim as a matter of law (*see Beal Sav. Bank v Sommer*, 8 NY3d 318, 324; *Leon v Martinez*, 84 NY2d 83, 87-88).

All concur except LINDLEY and VALENTINO, JJ., who dissent and vote to modify in accordance with the following Memorandum: We respectfully dissent. In our view, plaintiff failed to provide timely notice of an occurrence to Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company (defendant) and, as a result of that failure, plaintiff is not entitled to coverage as an additional insured under the policy issued by defendant to the subcontractor, defendant Hub-Langie Paving, Inc. (Hub-Langie). We would therefore modify the judgment by denying that part of defendant's motion seeking

to dismiss the declaratory judgment cause of action, reinstating that cause of action, and granting judgment to defendant by declaring that defendant has no duty to defend or indemnify plaintiff, and otherwise affirm.

"As an additional insured under the policy issued by defendant, plaintiff had, in the absence of an express duty, an implied duty, independent of the named insured's obligation, to provide defendant with timely notice of the occurrence for which it seeks coverage" (*City of New York v Investors Ins. Co. of Am.*, 89 AD3d 489, 489; *see 23-08-18 Jackson Realty Assoc. v Nationwide Mut. Ins. Co.*, 53 AD3d 541, 542; *Structure Tone v Burgess Steel Prods. Corp.*, 249 AD2d 144, 145). Where, as here, a contract of primary insurance requires notice "as soon as practicable" after an occurrence, "the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract" (*Argo Corp. v Greater N.Y. Mut. Ins. Co.*, 4 NY3d 332, 339; *see Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 743; *Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 440-443).

We agree with the majority that the December 2009 letter to plaintiff from the attorney of defendant Shane VanDerwall was, under the terms of the policy in question, "notice of an occurrence . . . which may result in a claim," and not notice of a claim, inasmuch as VanDerwall's attorney did not make a demand for payment or advise that legal action against plaintiff would be forthcoming (*see Matter of Reliance Ins. Co.*, 55 AD3d 43, 47, *affd* 12 NY3d 725). We further agree with the majority that, pursuant to the policy, notice of occurrence need not be provided directly from the insured to the insurer; rather, as the majority points out, the insured need only "see to it" that the insurer is notified of the occurrence. We do not agree with the majority, however, that the January 27, 2010 letter from plaintiff's liability carrier to Hub-Langie, which was subsequently sent to defendant by Hub-Langie, constituted notice of an occurrence under the terms of the policy.

As the majority points out, the policy provides that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense that may result in a claim." In our view, however, the January 27, 2010 letter received by defendant via Hub-Langie did not notify defendant of an occurrence that may result in a claim under the policy. Instead, the letter merely stated that plaintiff was seeking defense and indemnification from Hub-Langie pursuant to the indemnification provision of the subcontract. The letter does not indicate that plaintiff is seeking coverage directly from defendant as an additional insured on the policy issued by defendant to Hub-Langie, nor does it ask Hub-Langie to provide notice of any kind to defendant on plaintiff's behalf. Moreover, there is no indication in the record that plaintiff knew that the January 27, 2010 letter had been forwarded to defendant by Hub-Langie.

It is clear from the record that, when the January 27, 2010 letter was sent to Hub-Langie, plaintiff and its liability carrier did not realize that plaintiff was an additional insured on the policy

issued by defendant to Hub-Langie.  The letter repeatedly refers to "your insurance carrier," not *our* insurance carrier, and, as noted, sought indemnification coverage only.  Upon receipt of the January 27, 2010 letter, defendant disclaimed coverage to Hub-Langie because of Hub-Langie's failure to comply with the notice provisions of the policy, and then notified plaintiff's liability carrier of such disclaimer.  In the letter to plaintiff's liability carrier notifying it of the disclaimer to Hub-Langie, defendant stated that it had received the January 27, 2010 letter "making a claim of contractual indemnity" against Hub-Langie, and advised that plaintiff had not provided a copy of the contract containing the "claimed indemnity provision."  Plaintiff's liability carrier did not respond to that letter or otherwise advise defendant that plaintiff was seeking coverage directly from defendant as an additional insured.

Further, there is no evidence in the record that defendant knew that plaintiff was an additional insured under the policy, which did not name plaintiff as an additional insured.  Plaintiff was an additional insured simply by virtue of the blanket additional insured endorsement and its subcontract with Hub-Langie, a copy of which was not provided to defendant.  We note that, in the accord form sent to defendant along with the January 27, 2010 letter by Hub-Langie, the insured party was identified as Hub-Langie only.

It was not until May 27, 2010—more than four months after plaintiff was informed of VanDerwall's injury, and a month after plaintiff had been sued by VanDerwall—that plaintiff, through its attorney, notified defendant that it was seeking coverage directly from defendant as an additional insured.  Defendant promptly disclaimed coverage because of plaintiff's failure to comply with the notice provisions of the policy, among other reasons.  We conclude that, inasmuch as plaintiff clearly did not intend for the January 27, 2010 letter to serve as notice of an occurrence under the policy, and in fact did not even then realize that it was an additional insured under the Hub-Langie policy, the January 27, 2010 letter cannot serve as sufficient notice to defendant of an occurrence that might result in a claim for coverage under the policy by plaintiff (*see Liberty Ins. Underwriters, Inc. v Great Am. Ins. Co.*, ___ F Supp 2d ___, ___, 2010 WL 3629470, *5-*8).  We therefore agree with Supreme Court that defendant properly disclaimed coverage to plaintiff.

Entered:  July 11, 2014                    Frances E. Cafarell
                                           Clerk of the Court