EVANSTON INSURANCE COMPANY, Appellant-Respondent, v GAB BUSINESS SERVICES, INC., et al., Respondents-Appellants, et al., Defendant.

First Department, December 10, 1987

APPEARANCES OF COUNSEL

*James L. Fischer* of counsel *(Frank J. Fields* with him on

the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for appellant-respondent.

*Thomas M. Geisler, Jr.,* of counsel *(Lawrence J. Slattery* with him on the brief; *Shearman & Sterling,* attorneys), for GAB Business Services, Inc., respondent-appellant.

*Howard R. Cohen* of counsel *(Barry G. Saretsky* with him on the brief; *Bower & Gardner,* attorneys), for American Home Assurance Company, respondent-appellant.

### OPINION OF THE COURT

SANDLER, J.

The action giving rise to these cross appeals seeks a declaratory judgment primarily as to the rights and obligations of the parties under a contract of claims adjusters errors and omissions liability insurance issued by plaintiff Evanston Insurance Company (Evanston) on a "claims made" basis, i.e., for claims first made against the insured, defendant GAB Business Services, Inc. (GAB), during the policy period October 15, 1979 to October 15, 1980. The policy defined a claim as "a demand received by the Insured [GAB] for money or services, including the service of suit or institution of arbitration proceedings against the Insured." Defendant American Home Assurance Company (American Home) had been GAB's insurer, also on a claims made basis, for a period prior to that covered by the Evanston policy. The central question presented on this appeal is the date that a particular claim was first made against GAB.

GAB, one of this country's largest insurance adjusting companies, provides general investigative and claims adjusting services for insurance companies and self-insureds. On July 20, 1978, GAB entered into a three-year contract effective August 1, 1978 with the Southern California Rapid Transit District (RTD) whereby GAB was to provide administrative, investigative and claims adjusting services relative to personal injury and property damage claims filed against RTD in the course of providing public transportation. (Under prior contracts GAB had been providing such services to RTD since 1974.) As here pertinent, the contract obligated GAB to provide sufficient staff to handle and maintain all RTD claim files, to provide adequate supervisory personnel to oversee the processing of claims against RTD, to establish and adjust adequate reserves for each claim, to regularly review those

reserves and maintain adequate reserve levels at all times, and to provide a monthly computer analysis of all claims against RTD.

The GAB-RTD contract included a cancellation clause which allowed either party to terminate the contract for cause, which was defined, as here pertinent, as "Failure of GAB to maintain quality of its services called for by this contract at a level meeting general industry standards." The cancellation procedure required the complaining party to issue a 30-day notice to the other party to cure performance problems. If those problems were not corrected within 30 days, a 60-day notice of termination could be issued.

On December 22, 1978, while GAB was insured by American Home, RTD sent to GAB a 30-day notice demanding that a broad spectrum of performance deficiencies be corrected, including adjusters carrying excessive caseloads, insufficient supervisory personnel, inadequate establishment and adjustment of reserve levels, and failure to include relevant data on monthly computer printouts. RTD demanded that specified steps be taken to correct the deficiencies within 30 days, and warned that if that were not accomplished, RTD would consider exercising its option to cancel the contract. This letter did not assert that GAB had caused financial or other damages to RTD, it did not assert or refer to the existence of a claim for damages, and it did not include a reservation of rights to claim damages. GAB, perceiving the letter as simply a demand for improved future service in order to comply with its contract, did not notify American Home that a claim had been made against it by RTD. GAB instead formulated a plan to correct the deficiencies, and outlined the plan in a January 11, 1979 letter to RTD, which plan RTD later approved.

Effective October 15, 1979, GAB changed its professional errors and omissions insurer from American Home to Evanston. On December 4, 1979, RTD's insurance manager telephoned GAB to advise that RTD had received, several days previously, a draft of an audit prepared by Ebasco Risk Management Consultants, Inc. (Ebasco) which was highly critical of GAB's performance under its claims adjustment services contract, and that RTD had concluded from this audit that GAB had caused financial damage to RTD. It is undisputed that prior to the December 4 telephone conversation RTD had never informed GAB orally or in writing that RTD had suffered any financial damage attributable to GAB, or that it intended to hold GAB liable for any damage.

On December 19, 1979, RTD notified GAB in a new 30-day notice letter that GAB's performance had not improved since its initial letter dated December 22, 1978, complaining of essentially the same deficiencies, but rather had deteriorated. The letter set forth in far greater detail RTD's complaints that GAB's claim files lacked integrity and organization, and that basic investigative materials were often missing or not obtained until 2 or 3 years after the incident. In files containing medical reports, there was allegedly no analysis of the claimant's alleged injuries or evaluation of the treatment for those injuries to determine whether the extent of treatment received was justified. These and other described deficiencies in maintaining proper claims files were said to have resulted in "much greater expense" to RTD. Deficiencies in maintaining adequate updated reserves allegedly resulted in great difficulty to RTD because funds were not always readily available to meet required increases which were belatedly discovered. It was further asserted that GAB had continually failed to employ a sufficiently large and competent staff to supervise and adjust RTD's claims, resulting in default judgments and many complaints.

Significantly, this letter closed by stating that RTD "reserves all rights and remedies against GAB, including, but not limited to, the substantial damages sustained by the District as a result of GAB's failure of performance under the contract." Subsequently, RTD rejected GAB's proposal for correction of deficiencies, issued in January 1980. On February 15, 1980, RTD issued a 60-day notice of cancellation, and GAB's performance of the contract ceased at the end of that 60-day period.

On January 7, 1980, GAB wrote to Shand, Morahan & Company (Evanston's exclusive underwriting manager) enclosing a copy of RTD's December 19, 1979 letter, and advising that, while GAB intended to respond in detail refuting every allegation of failure of performance, there was a comment in the Ebasco report that GAB may have entered into settlement agreements as much as $1,000,000 per year in excess of the actual value of the claims, and that RTD's counsel had "suggested" that RTD would seek reimbursement in an undetermined amount for overpayment of claims. In February 1980 and December 1981, RTD brought civil actions in California against GAB seeking money damages resulting from GAB's alleged mishandling of RTD's public liability and property damage claims. Throughout 1980 and 1981, GAB submitted

status reports on the RTD litigation to Evanston, through its agent, Shand, Morahan. When GAB's legal fees exceeded the deductible under the Evanston policy, Evanston assumed payment of those fees.

In June 1982, Evanston for the first time raised the possibility that it might deny coverage, essentially on the basis that the December 22, 1978 letter from RTD to GAB had constituted a "claim" against GAB during the American Home policy period. Evanston tendered defense of the California litigation to American Home, which declined the tender.

On November 12, 1982, Evanston commenced the within action against GAB, American Home and RTD seeking, in its first cause of action, a declaratory judgment that Evanston is not obligated to defend or indemnify GAB on the RTD claims, that American Home is the primary insurer on those claims, and that Evanston is at most an excess insurer for amounts above the limits in the American Home policy. (Evanston's second and third causes of action against GAB for misrepresentation and breach of warranty are not before us on this appeal.)

In April 1986, Evanston moved for summary judgment on the first cause of action on the ground that the claims asserted by RTD in the California actions were first made against GAB prior to the inception date of Evanston's policy. GAB cross-moved for dismissal of Evanston's first cause of action on the ground that, as a matter of law, the December 22, 1978 letter to GAB was not a claim under the Evanston policy, and that RTD's first claim against GAB was made no earlier than December 1979 during the Evanston policy period. GAB also asserted that principles of estoppel and laches precluded Evanston from denying coverage. American Home cross-moved for summary judgment seeking a determination that it has no liability to GAB since RTD's December 22, 1978 letter to GAB was not a claim, and that even if it were, GAB did not notify American Home prior to the expiration of its policy on October 15, 1979. All the motions were denied by the IAS court on the ground that triable issues of fact exist as to when the claim against GAB was first made, and the reasonableness of Evanston's delay in denying coverage. All the moving parties appealed from the denial of their motions.

When there are no questions of credibility, and no inferences to be drawn from extrinsic evidence, as is here the case, the interpretation of an insurance policy is an issue of law to

be decided by the court *(State of New York v Home Indem. Co.,* 66 NY2d 669). In interpreting particular provisions, "the contract must be read as a whole to determine what the parties must have reasonably intended by its terms." *(Loblaw, Inc. v Employers' Liab. Assur. Corp.,* 85 AD2d 880, 881, *affd* 57 NY2d 872.)* The issue here presented is whether the 30-day notice letter which RTD sent to GAB on December 22, 1978, constituted a "claim", defined in Evanston's policy as "a demand received by the Insured [GAB] for money or services, including the service of suit or institution of arbitration proceedings against the Insured." We conclude that the December 22, 1978 letter did not constitute a "claim" as defined in the policy.

The definition of a "claim" in the Evanston policy appears in a section entitled "The Coverage", which also sets forth that Evanston is obligated to pay "all sums * * * which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD." Another provision in "The Coverage" section obligates Evanston to "defend any claim or suit against the Insured seeking damages to which this insurance applies" and that Evanston "shall not be obligated to pay any claim or judgment or to defend or continue to defend any suit or claim" after the applicable liability limit has been exhausted.

Reading the contract as a whole, the parties intended that a claim must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer. That is the essence of the agreement. Evanston effectively concedes the required nexus between a claim and damages by urging in its brief that in the December 22, 1978 letter, "RTD demanded that remedial services be performed by GAB to compensate RTD for damage it had suffered due to GAB's prior breaches." We do not believe the letter can be so construed, as it contains no mention of damages or compensation. The letter merely contained statements of dissatisfaction with certain aspects of GAB's past performance, a demand for future performance in accordance with the contract, and a warning that failure to correct the deficiencies listed might result in cancellation of the contract for cause as defined in the contract.

In contrast to the December 22, 1978 letter, RTD's December 19, 1979 letter (when Evanston was GAB's insurer) stated that GAB's deficiencies in maintaining proper claims files and assigning a sufficiently large and competent staff to investi-

gate and handle RTD's claims resulted in "much greater expense" to RTD and the entry of default judgments against RTD, and further "reserve[d] all rights and remedies against GAB, including, but not limited to, the substantial damages sustained by the District as a result of GAB's failure of performance under the contract."

In the context of this case, whenever RTD, or any of the many self-insureds and insurance companies for whom GAB performs claims adjustment services, receives a claim for personal injury or property damage and forwards that claim to GAB for processing, that might constitute, in a strictly literal sense, a "claim for services" under the respective contract. Surely it would be absurd to require GAB to forward every such claim for services, or notice of every disagreement with a client as to GAB's sufficient performance under its service contracts, to GAB's insurer. "[R]esort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity *(Silverstein* v. *Metropolitan Life Ins. Co.,* 254 N. Y. 81)" *(McGrail v Equitable Life Assur. Socy.,* 292 NY 419, 424; *see also, Reich v Home Mut. Ins. Co.,* 70 Misc 2d 180, 182).

We accordingly hold that RTD's 30-day letter to GAB, dated December 22, 1978, did not constitute a "claim" under the provisions of Evanston's policy, and that GAB first received notice of a claim against it in December 1979, while Evanston was GAB's insurer. We therefore have no need to address GAB's further argument that principles of estoppel and laches preclude Evanston from denying coverage.

Accordingly, the order of the Supreme Court, New York County (Carmen Ciparick, J.), entered March 4, 1987, which, in a declaratory judgment action to determine the rights and obligations of the parties under certain liability insurance agreements, denied motions for summary judgment by plaintiff and defendants, should be modified, on the law, without costs, defendant GAB's motion for partial summary judgment and defendant American Home's motion for summary judgment should be granted, and judgment should be entered declaring as to the first cause of action that Evanston has the duty to defend and indemnify GAB in the actions for damages against GAB brought by defendant RTD, and that American Home has no obligation to defend or indemnify GAB in those actions, and otherwise affirmed.

MURPHY, P. J., CARRO, KASSAL and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on March 4, 1987, unanimously modified, on the law, without costs and without disbursements, defendant GAB's motion for partial summary judgment and defendant American Home's motion for summary judgment granted, and judgment is to be entered declaring as to the first cause of action that Evanston has the duty to defend and indemnify GAB in the actions for damages against GAB brought by defendant Southern California Rapid Transit District, and that American Home has no obligation to defend or indemnify GAB in those actions, and otherwise affirmed.