806 S.E.2d 160

**STATE of West Virginia EX REL. STATE AUTO PROPERTY INSURANCE COMPANIES d/b/a State Auto Property and Casualty Insurance Company, Petitioner**

**v.**

**The Honorable James C. STUCKY, Judge of the Circuit Court of Kanawha County, West Virginia; a CMD Plus, Inc. Respondent**

**No. 17-0257**

Supreme Court of Appeals of West Virginia.

Submitted: September 19, 2017

Filed: October 10, 2017

Trevor K. Taylor, Esq., William P. Margelis, Esq., Taylor Law Office, Morgantown, West Virginia, Counsel for the Petitioner

Charles M. Johnstone, II, Esq., David A. Dobson, Esq., Johnstone & Gabhart, LLP Charleston, West Virginia, Counsel for the Respondent, CMD Plus, Inc.

Justice Ketchum:

This original prohibition proceeding concerns a liability insurance policy. It is a commercial general liability policy issued by the petitioner, State Auto Property Insurance Companies ("State Auto"), to its insured, respondent CMD Plus, Inc. ("CMD").

CMD, a residential construction company, contracted to build a home for Chandrakant N. and Kimberly S. Shah in Charleston, West Virginia. The construction activities caused ground slippage resulting in damage to the house and property of the adjacent, downhill homeowners, Barry G. Evans and Ann M. Evans ("Plaintiffs"). The plaintiffs filed an action in the Circuit Court of Kanawha County against the Shahs and CMD seeking recovery for their damage.

CMD filed a third-party complaint against its insurer State Auto alleging that State Auto delayed investigating the plaintiffs' claim, settling the plaintiffs' lawsuit, and indemnifying CMD. CMD asserted that, as a result, State Auto committed common law bad faith, violations of the *West Virginia Unfair Trade Practices Act*, and breach of contract. State Auto's efforts to obtain a dismissal of CMD's third-party complaint were unsuccessful. In the current petition for a writ of prohibition filed in this Court, State Auto challenges the circuit court's March 2, 2017, denial of State Auto's motion for summary judgment. State Auto contends there is no genuine issue of material fact and that it is entitled to a dismissal of CMD's third-party complaint as a matter of law.

The record, including the exhibits filed in support of State Auto's motion for summary judgment, reveals that State Auto defended and indemnified its insured, CMD, throughout the lawsuit as required by the commercial general liability policy. We note that, while the policy was purchased to provide liability coverage for damage to property sustained by third parties, such as the plaintiffs, the terms of the policy provided no coverage to CMD for damage to its own property.

This Court concludes that relief in prohibition is warranted and that State Auto is entitled to a dismissal of CMD's third-party complaint as a matter of law.

## I. The Underlying Action

CMD contracted to build a custom home on a parcel in Charleston, West Virginia, owned by the Shahs. The adjacent, downhill property owners were the plaintiffs. Construction activities on the Shah parcel resulted in surface water, storm water, mud and debris inundating and damaging the plaintiffs' house and property.

On April 13, 2011, the plaintiffs filed a lawsuit in the Circuit Court of Kanawha County against the Shahs and CMD. Asserting causes of action for nuisance, trespass and negligence, the plaintiffs sought compensatory damages as well as equitable relief to prevent further interference with the use and enjoyment of their property.[1]

## II. The Third-Party Complaint Against State Auto

CMD was insured for the damage to the plaintiffs' property under a commercial general liability policy issued by State Auto which provided coverage up to the policy limit of $1,000,000. CMD promptly notified State Auto of the damage to the plaintiffs' property, and CMD asserts that, at that time, the damage could have been remedied quickly and inexpensively. State Auto advised CMD that it would handle the claim. CMD states that State Auto then conducted a series of inspections and investigations, thereby delaying a potential settlement of the plaintiffs' lawsuit, increasing the amount of the plaintiffs' property damage, and resulting in the lawsuit filed against CMD by the plaintiffs.

CMD filed a third-party complaint against State Auto on March 20, 2012. The third-party complaint contained three Counts. Count I alleged that State Auto committed common law bad faith through its delay in resolving the property damage claim of the plaintiffs and through its failure to protect CMD from litigation. Count II alleged, for similar reasons, that State Auto violated the *West Virginia Unfair Trade Practices Act, W.Va. Code*, 33-11-1 [1974], *et seq.*[2] Count III alleged a breach of State Auto's contractual obligation to CMD by failing to make insurance proceeds available where liability regarding the plaintiffs' claim was clear.

State Auto filed a motion to dismiss CMD's third-party complaint on the ground that CMD lacked standing to assert common law and statutory bad faith or unfair claims settlement practices regarding how State Auto handled the plaintiffs' lawsuit. According to State Auto, its only obligation to its insured, CMD, was to defend the lawsuit and indemnify CMD for any meritorious claims asserted by the plaintiffs. State Auto contends that it defended CMD and fully settled the plaintiffs' claims. State Auto alleged that CMD's breach of contract theory fails for the same reason, *i.e.*, CMD lacks standing to assert any bad faith claim the plaintiffs may have

1. The complaint was styled *Barry G. Evans and Ann M. Evans v. CMD Plus, Inc.; C. K. Shah; Chandrakant N. Shah; and Kimberly S. Shah*, Civil Action No. 11-C-606 (Kanawha Co. 2011). C. K. Shah, a construction contractor, was a corporate officer of CMD.

The record is unclear regarding ownership of the Shah property. The complaint alleged that the Shah property was owned by Chandrakant N. Shah and Kimberly S. Shah. The third-party complaint refers to contractor C. K. Shah as an owner of the property. For purposes of this Opinion, we will refer to the property as the "Shah property."

2. Count II alleged violations of *W.Va. Code*, 33-11-4 [2002], subsections (9)(b), failing to act reasonably promptly regarding a claim arising under an insurance policy; (9)(f), not attempting in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability is reasonably clear; and (9)(g), causing litigation to recover amounts due under an insurance policy.

had regarding how State Auto handled the lawsuit.[3]

On September 25, 2012, State Auto's motion to dismiss was denied in part. The order entered by the circuit court stated that the motion was denied "except that the Court will not allow the Third-Party Plaintiff CMD Plus, Inc. to assert claims that, in actuality, are claims of the Plaintiffs, Barry G. Evans and Ann M. Evans. To the extent any such claims have been asserted, those claims are dismissed."

Thereafter, the plaintiffs' lawsuit fully settled resulting in the plaintiffs receiving $325,000 paid by State Auto. The plaintiffs executed an agreement discharging the Shahs, CMD and State Auto from all claims arising from CMD's construction activities.

State Auto then filed a renewed motion to dismiss CMD's third-party complaint on the ground that State Auto met its obligations under the commercial general liability policy to defend and indemnify CMD. State Auto asserted that

> the duty to indemnify has not been breached because litigation in the underlying matter was resolved by settlement. Pursuant to the terms of that settlement, State Auto paid to resolve all claims asserted by the [plaintiffs] against CMD while securing a complete release of CMD of and from any and all liability relating to the allegations contained in the [plaintiffs'] Complaint. In fact, State Auto has secured a release to make sure that CMD cannot be sued again in the future. Under these circumstances, no judgment was entered against CMD and no settlement was negotiated wherein payment was demanded of CMD. Accordingly, as a matter of law, CMD cannot set forth any set of facts upon which it may base a claim for bad faith breach of the insurance contract against State Auto.

On November 10, 2015, the circuit court denied State Auto's renewed motion to dismiss. In the order, the circuit court simply restated each Count of CMD's third-party complaint and concluded that the allegations were sufficient to allow the matter to go forward. State Auto sought relief from the November 10, 2015, order by filing a petition for a writ of prohibition in this Court.

In *State ex rel. State Auto Property Insurance Companies v. Stucky*, 2016 WL 3410352 (W.Va. 2016), a Memorandum Decision issued on June 14, 2016, this Court determined that under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* our analysis of State Auto's requested dismissal was limited to the allegations within the four corners of CMD's third-party complaint. The settlement of the lawsuit and other matters of evidence were not to be considered. This Court concluded that CMD's allegations of common law and statutory bad faith and breach of contract were sufficiently pled to withstand State Auto's renewed motion to dismiss. Therefore, relief in prohibition was denied with the caveat that State Auto "*could file a motion for summary judgment after the completion of discovery in order to obtain relief.*" (emphasis added)[4]

3. In June 2012, State Auto was granted leave to file a complaint for declaratory judgment on the question of whether the commercial general liability policy covered the plaintiffs' property damage claim. The circuit court determined that none of the policy exclusions applied and that the plaintiffs' claim encompassed the "exact type of damage" the policy was intended to cover. The circuit court noted that, although State Auto was providing a defense to CMD in the underlying action under a reservation of rights, CMD incurred attorney fees as to the declaratory judgment in asserting that the plaintiffs' claim was covered under the policy. Consequently, the circuit court ordered State Auto to pay CMD attorney fees in the amount of $52,757.54.

4. Chief Justice Ketchum and Justice Loughry filed dissenting Opinions in *State ex rel. State Auto Property Insurance Companies v. Stucky.* Chief Justice Ketchum stated that CMD's purported first-party claim failed for the following reasons: (1) CMD could not assert a "loss claim" because, under the commercial general liability policy, only damage to the plaintiffs' property (and not CMD's own property) was covered, and (2) CMD could not assert an "excess judgment claim" because there was no judgment, *i.e.*, State Auto settled all of the plaintiffs' claims. Similarly, Justice Loughry noted in his dissenting Opinion: "Because the CGL policy was not procured for the purpose of covering losses directly sustained by the insured, it stands to reason that there is no basis for a first-party bad faith claim."

### III. State Auto's Motion for Summary Judgment

The parties conducted discovery following the denial of relief in prohibition. In January 2017 State Auto filed a motion for summary judgment. State Auto asserted that there was no question of fact that it had provided CMD with a defense in the plaintiffs' lawsuit and that a settlement and release of the plaintiffs' damage claim was secured at no cost to CMD and without the entry of an adverse judgment. CMD filed a response to the motion, asserting that summary judgment on the third-party complaint was precluded by questions of fact. A number of exhibits were filed by the parties in support of their respective positions.

On March 2, 2017, the circuit court denied State Auto's motion for summary judgment on the basis of unresolved questions of fact regarding CMD's allegations of common law and statutory bad faith and breach of contract. Noting CMD's assertion that State Auto's dilatory handling of the plaintiffs' damage claim resulted in the filing of the lawsuit, the circuit court concluded that CMD had a first-party claim under West Virginia law "in that CMD alleged that its insurer, State Auto, failed to use good faith in settling a claim by someone the insured allegedly harmed or injured."

In the current petition for a writ of prohibition, State Auto seeks relief from the circuit court's March 2, 2017, order. State Auto contends that it performed its obligations under the commercial general liability policy and that, because there are no genuine issues of material fact, CMD's third-party complaint should be dismissed as a matter of law.

### IV. Standard for Relief in Prohibition

This Court has original jurisdiction in prohibition proceedings pursuant to art. VIII, § 3, of *The Constitution of West Virginia.* In considering whether to grant relief in prohibition, this Court stated in the syllabus point of *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925): "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." *Accord* syl. pt. 1, *State ex rel. Progressive Classic Ins. Co. v. Bedell*, 224 W.Va. 453, 686 S.E.2d 593 (2009).

State Auto contends that the circuit court exceeded its jurisdiction in allowing CMD's third-party complaint to go forward. We therefore apply the following guidelines set forth in syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Accord State ex rel. Rubenstein v. Bloom*, 235 W.Va. 70, 72-73, 771 S.E.2d 717, 719-20 (2015).

### V. Discussion

█ The dispositive facts with regard to CMD's third-party complaint against State Auto are not in dispute. CMD, a corporate entity, was issued, and paid the premiums for, a commercial general liability policy with State Auto. As a liability policy, coverage was provided to CMD for damage to the property of others, such as for the damage to the downhill property of the plaintiffs.

State Auto initially contested coverage of the plaintiffs' damage in a declaratory judg-

ment proceeding. When the circuit court determined that coverage would be afforded, State Auto was ordered to pay CMD attorney fees and costs in the amount of $52,757.54. During the declaratory judgment proceeding, State Auto continued to provide CMD with a defense in the lawsuit filed by the plaintiffs. *See* note 3, *supra.*

The lawsuit was fully settled by State Auto resulting in the plaintiffs receiving $325,000. The settlement amount was paid by State Auto on CMD's behalf. CMD was therefore defended and indemnified by State Auto with respect to the lawsuit as required by the commercial general liability policy. The settlement was obtained at no cost to CMD, and no adverse judgment was entered in the circuit court.

Neither the plaintiffs nor the Shahs filed a third-party bad faith claim or an unfair claim settlement action against State Auto. Such an action would have been barred pursuant to *W.Va. Code*, 33-11-4a(a) [2005], which states: "A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice."

Prior to the enactment of *W.Va. Code*, 33-11-4a(a) [2005], this Court held in the syllabus of *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 504 S.E.2d 893 (1998):

> A third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty.

*Accord Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W.Va. 34, 39, 716 S.E.2d 696, 701 (2011). Nevertheless, the plaintiffs released any bad faith claim they may have had against State Auto pursuant to the settlement of their lawsuit seeking damages against the Shahs and CMD.

■ In this State, an insured has a right to bring a first-party common law or statutory bad faith action against its insurer. Such an action is defined in *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998), as follows: "[A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." [5]

In this proceeding, we are asked to determine whether CMD's first-party bad faith claim should be permitted to go forward. The record, however, establishes that CMD was fully defended by its insurer, State Auto, throughout the lawsuit filed by the plaintiffs. State Auto also reached and paid a settlement of $325,000 to the plaintiffs, an amount well within the $1,000,000 policy limit. The defense and indemnification were provided at no cost to CMD, and no judgment was entered against CMD by the circuit court. On this record, we cannot see any evidence that State Auto failed to exercise good faith in meeting its obligations under the commercial general liability insurance policy.

Finally, CMD alleges that State Auto engaged in unfair claim settlement practices and thereby violated three subsections of the *West Virginia Unfair Trade Practices Act.* CMD asserts that State Auto, as a general business practice, failed to act reasonably promptly on the claim for coverage; failed to effectuate a prompt, fair, and equitable settlement of the plaintiffs' claim; and forced the plaintiffs to file a lawsuit against the Shahs and CMD to resolve the amounts due under the commercial general liability policy.

Specifically, CMD alleges violations of the following subsections found in *W.Va. Code*, 33-11-4 [2002], of the UTPA:

> (9) No person shall commit or perform with such frequency as to indicate a general business practice any of the following: . . .

5. *See State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W.Va. 338, 801 S.E.2d 216, 223 (2017), wherein we stated: "A prerequisite for any first-party bad faith action is an underlying claim for coverage or benefits or an action for damages which the insured alleges was handled in bad faith by its insurer." *See also* syl. pt. 2 of *Loudin* stating that a first-party bad faith action "is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim filed by the insured." *Accord* syl. pt. 2, *Goff v. Penn Mut. Life Ins. Co.*, 229 W.Va. 568, 729 S.E.2d 890 (2012).

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]

CMD has failed to establish genuine issues of material fact under those subsections of the UTPA. The first two subsections relied upon by CMD are subsections (9)(b) and (9)(f). In the context of a liability policy, such as the commercial general liability policy herein, subsections (9)(b) and (9)(f) are designed to protect plaintiffs who seek liability-related damages from an insured, and are not designed to protect the insured.

Subsection(9)(b) pertains to "communications with respect to claims," and subsection (9)(f) pertains to "settlements of claims in which liability has become reasonably clear." With regard to a liability insurance policy, the term "claim" is used "in its common (and common sense) usage: an effort by a third party to recover money from the insured." *Evanston Ins. Co. v. Sec. Assur. Co.*, 715 F.Supp. 1405, 1412 (N.D. Ill. 1989) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 673 F.Supp. 300, 307 n.17 (N.D. Ill. 1987)). " 'Claim' ordinarily means a demand on the insured for damages resulting from the insured's alleged negligent act or omission." *Safeco Title Ins. Co. v. Gannon*, 54 Wash. App. 330, 774 P.2d 30, 33 (1989). "[A] claim must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Evanston Ins. Co. v. GAB Bus. Servs., Inc.*, 132 A.D.2d 180, 521 N.Y.S.2d 692, 695 (1987).

With respect to the State Auto policy issued to CMD, the "claim" at issue in subsections (9)(b) and (9)(f) is the demand upon CMD by the plaintiffs for compensation for damages resulting from CMD's alleged negligent act or omission. To the extent State Auto failed to "act reasonably promptly upon communications with respect to claims," or failed to "effectuate prompt, fair and equitable settlements of claims," in this action, the UTPA protects only the efforts by the plaintiffs to recover legally cognizable damages from CMD by way of State Auto's liability policy. As the insured protected by the commercial general liability policy, CMD itself can make no demand that can be defended, settled or paid by State Auto. Therefore, CMD has no standing to assert a claim under subsection (9)(b) or subsection (9)(f) of *W.Va. Code*, 33-11-4 [2002].

The third subsection of *W.Va. Code*, 33-11-4 [2002], relied upon by CMD is subsection (9)(g). That subsection prohibits an insurer from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered." Subsection (9)(g) has no application to the circumstances herein.

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Under a typical liability policy, an insured is not entitled to any "amounts" under the policy, and an insured can make no "claims for amounts" that would later be "reasonably similar to the amounts ultimately recovered." Under the terms of the commercial general liability policy issued by State Auto, the insured, CMD, was entitled to two things: a defense against the liability claim of the plaintiffs and indemnification of any damages within policy limits due to the plaintiffs as a result of CMD's alleged negligent act or omission. CMD cites no authority suggesting CMD had a right to "recover amounts due" under the State Auto policy. CMD therefore

has no standing to assert a claim under *W.Va. Code*, 33-11-4(9)(g) [2002].

■ Syllabus point 3 of *Aetna Cas. and Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), holds: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Accord* syl. pt. 6, *Old Republic Ins. Co. v. O'Neal*, 237 W.Va. 512, 788 S.E.2d 40 (2016). Moreover, this Court recognized in *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995), that summary judgment "is one of the few safeguards in existence that prevent frivolous lawsuits from being tried which have survived a motion to dismiss."

The insured, CMD, was defended and indemnified by its insurer, State Auto, with respect to the lawsuit filed by the plaintiffs as required by the commercial general liability policy. A settlement was obtained at no cost to CMD, and no adverse judgment was entered in the circuit court. Consequently, this Court is of the opinion that, as a matter of law, CMD cannot maintain a first-party action against State Auto for common law and statutory bad faith and breach of contract.[6]

## VI. Conclusion

This Court grants State Auto's requested relief in prohibition. The March 2, 2017, order of the Circuit Court of Kanawha County which denied State Auto's motion for summary judgment is set aside, and CMD's third-party complaint against State Auto is dismissed as a matter of law.

Writ granted.

JUSTICE DAVIS and JUSTICE WORKMAN dissent and reserve the right to file separate Opinions.

Workman, Justice, dissenting, joined by Justice Davis:

I respectfully dissent to the majority opinion, not only because the majority has improperly inserted itself into the role of trial court, but also because it has implicitly altered the law without even enunciating a new syllabus point.

This case has a remarkably tortured history, including factual complexities rendering it particularly unsuitable for disposition by summary judgment and writ of prohibition. To briefly summarize the salient events, a construction project by CMD resulted in damage in 2009 to property owned by Mr. and Mrs. Barry Evans. The Evanses sued CMD in 2011; CMD was insured by State Auto under a commercial general liability policy. CMD ultimately filed a third-party complaint against State Auto in March 2012, alleging bad faith,[1] violations of the Unfair Trade Practices Act by failure to attempt a good faith settlement, and breach of contract.

The circuit court denied State Auto's motion to dismiss in 2012, pending resolution of the underlying claim. Subsequent to four years of litigation, including an unsuccessful attempt by State Auto to deny coverage, State Auto finally resolved the Evanses' underlying claims against CMD in 2015. State Auto then filed another motion to dismiss CMD's action against it, and the circuit court once again denied the motion.

State Auto then sought relief from this Court, through a writ of prohibition; this Court wisely denied that request in *State ex rel. State Auto Prop. Ins. Companies v. Stucky*, No. 15-1178, 2016 WL 3410352

6. In addition to the handling of the plaintiffs' claim, CMD's third-party complaint also alleged bad faith regarding State Auto's purported delay in resolving the City of Charleston's claim for the relocation of a sewer line necessitated by the slippage. The record demonstrates, however, that State Auto defended CMD against the City's claim, provided coverage for the relocation of the sewer line and secured a release on behalf of CMD of all liability for damage. The settlement of the claim was without cost to CMD and no judgment was entered. We therefore find no merit in CMD's third-party complaint regarding the claim of the City of Charleston.

1. CMD sought damages for its economic losses, attorney's fees, annoyance and inconvenience, mental anguish, and emotional distress under *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986). CMD did receive attorney's fees in the amount of $52,757.54 for prevailing in the June 2012 declaratory judgment action filed by State Auto, wherein it sought to deny coverage.

(W.Va. June 14, 2016) (hereinafter "*Stucky I*"). This Court held that CMD had met its burden of enumerating sufficient claims for its first-party bad faith, statutory bad faith, and breach of contract actions. This Court found that CMD had sufficiently pled its allegations and that State Auto's motion to dismiss was properly denied by the circuit court. We observed "CMD's third-party complaint against State Auto is a first-party bad faith action because CMD is suing its own insurer, State Auto, for *failing to use good faith in settling a claim* brought against CMD by the Evanses." *Id.* at *3 (emphasis supplied). We further noted:

> CMD alleged, inter alia, "[a]s a result of State Auto not properly handling CMD's claim, the Plaintiffs filed their Complaint against CMD and the Shahs for the alleged property damage to the Evans property." This states a first-party common law bad faith claim under our law in that CMD alleged that its insurer, State Auto, failed to use good faith in settling a claim by someone the insured allegedly harmed or injured.

*Id.* at *4.

Chief Justice Ketchum and Justice Loughry dissented to that decision. Chief Justice Ketchum opined that CMD could not assert a loss claim because only damage to the plaintiffs' property was covered, and Justice Loughry opined that there was no basis for a first-party bad faith claim because the policy was "not procured for the purpose of covering losses directly sustained by the insured." *Id. at* *6-9.

State Auto thereafter filed a motion for summary judgment in the circuit court, and that request was denied. The circuit court held that CMD had alleged dilatory handling of the claim, resulting in the filing of a lawsuit, and had further alleged the absence of good faith in settling the claim. Thus, the circuit court held that summary judgment was inappropriate at that juncture.

In response, State Auto once again sought this Court's intervention, requesting a writ of prohibition and arguing that the circuit court clearly erred in denying its motion for summary judgment. I believe the majority's decision to grant a writ of prohibition is erroneous. First, a writ of prohibition is an extraordinary remedy to be utilized in extremely limited instances.[2] Despite this Court's consistent observation that the writ "does not lie for errors or grievances which may be redressed in the ordinary course of judicial proceedings[,]" the majority permits State Auto to employ an extraordinary writ as essentially a substitute for appeal in this case. *County Court v. Boreman,* 34 W.Va 362, 366, 12 S.E. 490, 492 (1890). A writ of prohibition is inappropriate in this case, and courts should be exceedingly wary of overindulgence in extraordinary remedies and "should sparingly use a writ to review an order denying a motion for summary judgment and limit its use to cases where extraordinary and compelling reasons exist to warrant such relief." *State ex rel. Speer v. Grimm,* 599 S.W.2d 67, 69 (Mo. Ct. App. 1980). As this Court cautioned in pertinent part of syllabus point one of *State ex rel. USF&G v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995),

> [T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in con-

2. In the oft-quoted syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court identified the five factors to be examined in conjunction with a request for a writ of prohibition:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

travention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Even if the majority somehow finds it appropriate to reach the merits of the summary judgment issue via an extraordinary writ, I find its ultimate conclusions improper. The moving party, State Auto, had the "*burden* of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, in part, *Aetna Cas. & Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963) (emphasis supplied). In granting the writ, the majority references the axiomatic standard for issuance of a writ, as enumerated in syllabus point four of *Hoover. See Hoover*, 199 W.Va. at 14, 483 S.E.2d at 14. While the majority does not bother to evaluate each of the five factors, one can assume it finds the third factor dispositive; it considers the circuit court's denial of summary judgment clearly erroneous as a matter of law. I believe this is an inaccurate conclusion by the majority. State Auto asked the circuit court to grant summary judgment. Thus, State Auto had the burden of showing the absence of a genuine issue of material fact, and any doubt was to be resolved in favor of CMD.

In denying the motion for summary judgment, the circuit court found the existence of genuine issues of material fact and held: "After a review of the pleadings, the Motion, the memoranda, and the evidence presented, as well as oral argument, the Court finds that State Auto is not able to overcome the applicable legal standard for a Rule 56 motion for Summary Judgment." Further, the circuit court found "that there exist genuine issues of material fact regarding" CMD's claims. The circuit court recognized that the hillside slippage was reported to State Auto on March 9, 2009, and that State Auto was informed that the slippage was causing property damage to the Evanses. As early as March 26, 2009, State Auto was presented with a repair estimate of $14,563.50. At the direction of State Auto, the slip was not repaired and continued to deteriorate.

According to the circuit court's recitation of facts in evidence, State Auto subsequently hired an independent adjuster, Ken Shaffer, and an engineer, Darren Franck, for the purpose of proposing a remedy and resolution. Despite information presented to State Auto indicating that the slip had continued to worsen, had damaged a City of Charleston sewer line, and had jeopardized a pending sale of the newly-constructed home, no action was taken. When Mr. Franck advised State Auto that a submitted repair estimate should be approved, State Auto fired Mr. Franck. By October 2009, Mr. Shaffer also recommended that State Auto approve a repair for $151,000. State Auto refused the recommendation and fired Mr. Shaffer. State Auto was again advised that the delays were adversely affecting CMD and causing damage including the loss of the sale of the newly-constructed home and additional interest payments. In May 2011, counsel for the Evanses submitted a settlement proposal that was allegedly substantially lower than the ultimate June 2015 settlement of $325,000. CMD asserts that the matter could have concluded nearly seven years earlier for $14,563.50.

The circuit court found this evidence sufficient to warrant denial of State Auto's summary judgment motion and reasoned as follows:

> CMD has put forth evidence that State Auto failed to act in good faith and deal fairly in regards to the claim. CMD's evidence includes testimony of C.K. Shah that the claim could have been resolved but-for the mismanagement and failure of State Auto. CMD also has put forth expert testimony from James McQueen, who has opined that State Auto established a course of conduct that falls far below industry standard for the handling of a complicated construction claim, and that State Auto put its own interests ahead of the interests of its insured policyholder from the fall of 2009 forward by taking a coverage position that was untenable, impractical, and grossly unfair to Evans and to its insured.

Additionally, CMD has put forth evidence that State Auto failed to properly defend and indemnify CMD throughout the claim process. Such evidence includes that State Auto failed to properly investigate the claim, failed to propose a remedy to resolve the Evans claim, failed to promptly and appropriately approve and resolve the claim, and failed to hire an independent lawyer to represent CMD's interests in the litigation filed by the Evans. This Court finds that the duty to defend and indemnify arc not met merely by providing the insured with an attorney and ultimately obtaining a release of the insured.

The circuit court relied upon this Court's definition of a first-party bad faith action as "one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." *State of West Virginia ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 75, 86 (1998). The circuit court concluded that "CMD properly has asserted and has presented evidence to prove a first-party bad faith claim against State Auto" and further found: "There is no requirement under West Virginia law that claims falling under the first type of first-party bad faith action only arise where there has been an excess judgment."

The majority is apparently convinced by State Auto's argument. The majority holds: "On this record, we cannot see any evidence that State Auto failed to exercise good faith in meeting its obligations under the commercial general liability insurance policy." The majority further finds:

> The insured, CMD, was defended and indemnified by its insurer, State Auto, with respect to the lawsuit filed by the plaintiffs as required by the commercial general liability policy. A settlement was obtained at no cost to CMD, and no adverse judgment was entered in the circuit court. Consequently, this Court is of the opinion that, as a matter of law, CMD cannot maintain a first-party action against State Auto for common law and statutory bad faith and breach of contract.

Thus, the majority implicitly alters the law without even enunciating a new syllabus point, suggesting that an insurer has only two duties under the commercial general liability policy—provision of a defense and indemnification—and that eventual satisfaction of those two duties precludes any recovery in a bad faith action.

This over-simplified approach is myopic. As the circuit court astutely observed, "the duty to defend and indemnify are not met merely by providing the insured with an attorney and ultimately obtaining a release of the insured." On this matter's first appearance in this Court, a majority recognized that CMD is claiming bad faith in the settlement *process*, "for failing to use good faith in settling a claim." *Stucky I*, 2016 WL 3410352 at *3. The majority in the present case draws the line injudiciously by essentially agreeing with State Auto's assertion that provision of a defense and indemnification are sufficient, regardless of the manner in which such things are accomplished. However, paying in the end may not always be sufficient; an insurer must also adhere to its duty of good faith and fair dealing throughout the process. This is particularly imperative where the insured incurs damages of his own, as a result of any bad faith or unreasonable delay, in addition to the amount of indemnification. The allegations made by the insured below were that the insurer acted in bad faith in acknowledging and then denying coverage; by failing to resolve a claim where liability was clear for seven years; by causing the insured to lose the sale of a house that was affected by the slide, as well as to incur additional mortgage and finance charges, attorney's fees and other out-of-pocket expenses; by causing the insured to be sued both in a declaratory relief proceeding wherein the insured denied coverage after first acknowledging it and the ultimate civil action; by firing both an independent adjuster and an engineer, each of whom recommended payment of the claim early on; and by causing the insured to suffer other consequent damages as the result of the long delay and obstreperousness of the insurer in failing to meet its obligations under the insurance contract in a timely manner.

This Court most assuredly should not be in the business of resolving factual issues, more properly left to a jury. The circuit court was justified in denying summary judgment, and, viewing the evidence in a light most favorable to the non-moving party, it is obvious that State Auto did not meet its burden of demonstrating that no genuine issue of material fact exists. We have uniformly held that a common law duty of good faith and fair dealing is an essential component of every insurance relationship. *Elmore v. State Farm Mut. Auto. Ins. Co.*, 202 W.Va. 430, 434, 504 S.E.2d 893, 897 (1998) (holding a "common law duty of good faith and fair dealing in insurance cases ... runs between insurers and insureds and is based on the existence of a contractual relationship"); *see also Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 325 Wis.2d 56, 784 N.W.2d 542, 552 (2010) ("An insurance company owes a duty to its insured to settle or compromise a claim made against the insured and to act in good faith in doing so.").

We have also consistently recognized that "[a] policyholder buys an insurance contract for peace of mind and security, not financial gain, and certainly not to be embroiled in litigation. The goal is for all policyholders to get the benefit of their contractual bargain...." *Miller v. Fluharty*, 201 W.Va. 685, 694, 500 S.E.2d 310, 319 (1997) (footnote omitted). "[W]hen an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 329, 352 S.E.2d 73, 79 (1986); *see also Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984) ("The motivation of the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage.... Particularly when handling claims of third persons that are brought against the insured, an insurance company stands in a position similar to that of a fiduciary." (internal citations omitted)).[3] Thus, an insurer should not be permitted to unjustifiably delay or impede resolution of a claim in a manner that causes additional damages to its insured.

Critically, the ultimate financial satisfaction is not singularly dispositive in bad faith cases. The circuit court's holding in this regard is thus consistent with prior holdings of this Court, as well as other jurisdictions. *See Stucky I*, 2016 WL 3410352 at *4 ("While this Court has acknowledged that common law bad faith claims falling under the first type above may or often arise where there is an excess judgment against the insured, we have not held that such claims can only arise where there has been an excess judgment."). In *Goodson v. American Standard Insurance Co. of Wisconsin*, 89 P.3d 409 (Colo. 2004), the Supreme Court of Colorado observed that the "basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability." *Id.* at 414 (internal citations omitted). Consequently, "the fact that an insurer eventually pays an insured's claims will not prevent the insured from filing suit against the insurer based on its conduct prior to the time of payment." *Id.* Neither the absence of an excess judgment nor ultimate settlement for policy limits is necessarily fatal to an insured's claim for bad faith. *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818 (Mo. 2014); *see also Roehl*, 784 N.W.2d at 553 (addressing insurer's actions exposing insured to liability for sums within deductible amount and holding "the breach of duty from which the tort claim follows is not of any explicit term of the contractual obligations but of the implicit duty to act in good faith in carrying out the insurance contract."); *Trimble*, 691 P.2d at 1142 (holding that an actual judgment in excess of policy limits was not a necessary prerequisite to liability).

As the Supreme Court of Kansas accurately summarized in *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969): "In the final analy-

3. "The relevant inquiry is whether the facts pleaded show the absence of any reasonable basis for denying the claim, 'i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.'" *Trimble*, 691 P.2d at 1142 (quoting *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)).

sis, the question of liability depends upon the circumstances of the particular case and must be determined by taking into account the various factors present, rather than on the basis of any general statement or definition." *Id.* at 511-12. In penning this dissent, I certainly do not profess to know how a jury would have resolved the present case or what the ultimate verdict should have entailed.[4] I do, however, vehemently oppose a resolution via summary judgment awarded by *this Court* in the form of the majority's grant of a writ of prohibition.

I also find it extremely disconcerting that this Court has demonstrated an increasingly frequent penchant for rushing to ultimate judgment without the full benefit of thorough proceedings and rulings from the circuit court level. Principles of judicial restraint would obviously advise against such impetuousness. As I emphasized in my separate opinion in *Morrisey v. West Virginia AFL-CIO*, No. 17-0187, 239 W.Va. 633, 804 S.E.2d 883, 2017 WL 4103745 (W.Va. Sept. 15, 2017), an "appellate court must refrain from adopting a position that has not been tested 'in the crucible of the adversary process[.]' " *Id.* at *8, 239 W.Va. 633, 804 S.E.2d 883 (Workman, Justice, concurring in part, and dissenting in part) (quoting Peter J. Rubin, *Keynote Address: Justice Ruth Bader Ginsburg: A Judge's Perspective*, 70 Ohio St. L.J. 825, 832 (2009)). Discussing the emboldening, yet sobering, recognition that courts do indeed "have the last word," Justice Rehnquist observed as follows in his dissent in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972):

> But just because courts in general, and this Court in particular, do have the last word, the admonition of Mr. Justice Stone dissenting in *United States v. Butler* must be constantly borne in mind:
>
> > [W]hile unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint.

*Id.* at 467 (Rehnquist, Justice, dissenting) (internal citations omitted). That sense of self-restraint must be rigorously observed, and this Court must be vigilant in wielding its power wisely. We must not impose, by judicial fiat, a result that is properly achievable only by allowing the cases to play out on the stages of the lower courts. While the majority rushes headlong to judgment, such action contravenes fundamental principles of judicial review. By deciding this case on a factual basis without any guidance on the law relating to the underlying issue, the majority preserves their freedom to decide yet another case on another day with similar issues differently, if they please, and leaves the law in this arena very murky.

Based upon the foregoing, I resolutely dissent. I am authorized to state that Justice Davis joins me in this separate opinion.

4. I also recognize another outstanding issue which would have benefitted from jury resolution. State Auto had raised a claim of timeliness of CMD's bad faith claims. When first confronted with this assertion in State Auto's attempt to dismiss the case on a Rule 12(b) motion, this Court explained that our "examination of the pleadings indicates that this is not the type of case from which only one conclusion may be drawn regarding the timeliness of CMD's bad faith claims. For this reason, we find no merit to State Auto's timeliness argument." *Stucky I*, 2016 WL 3410352 at *5. This Court also observed, in *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), that "[i]n the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." *Id.* at 714-15, 487 S.E.2d at 909-10.